FILED
COURT OF APPEALS
DIVISION II

2014 OCT 28 AM 10: 06

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF TACOMA, | No. 44794-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAVID ERICKSON, | |
| Appellant. | |

JOHANSON, C.J. — On discretionary review, David Erickson challenges the superior court's affirmance of his municipal court jury trial conviction for being in physical control of a motor vehicle while under the influence or effect of an intoxicant with a special verdict finding that he had refused a breath test requested by law enforcement. He argues that he proved his affirmative defense[1] and that the City of Tacoma (City) and one of its witnesses improperly commented on his requests for counsel. Because the evidence supports the verdict and the

_____

[1] "No person may be convicted [of being in physical control of a motor vehicle while under the influence or affected by an intoxicant], prior to being pursued by a law enforcement officer, the person has moved the vehicle safely off the roadway." RCW 46.61.504(2). In 2013, the legislature amended RCW 46.61.504 to reflect changes in the law following the legalization of adult marijuana use; these amendments did not alter any of the provisions relevant to this appeal. LAWS OF 2013, ch. 3, § 35. Accordingly, we cite to the current version of the statute throughout.

references to Erickson's requests for counsel were harmless beyond a reasonable doubt, we affirm the superior court and the municipal court jury verdict.

## FACTS

### I. BACKGROUND

In September 2011, Erickson legally parked his motorcycle on the side of a public street and went into a bar. Anderson Durham later parked his car directly in front of the motorcycle and went into a nearby restaurant.

Later that night, Durham saw Erickson return to his motorcycle, straddle it, put a key in the ignition, and try to "upright" the motorcycle. Although Erickson did not start the motorcycle, he was unable to control the motorcycle when he attempted to "upright it," and it fell sideways into and damaged Durham's car. After bystanders helped him right the motorcycle, Erickson again lost control of the motorcycle and it fell into Durham's car. After this, a woman got on the motorcycle and prevented him from getting back on it. Durham then saw Erickson lean over the motorcycle, put something that looked like a key ring in his pocket, and walk away.

Durham called 911. Officers responded a short time later, and one of them arrested Erickson in a nearby bar. The arresting officer advised Erickson of his *Miranda*[2] rights. When the arresting officer then asked Erickson some questions, Erickson did not respond.

When the officers escorted Erickson to the patrol car, he could not keep his balance and he had difficulty standing and walking. Erickson's eyes were watery and droopy, his face was flushed, he smelled strongly of alcohol, and his speech was slurred; the officers believed he was

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

intoxicated. When Tacoma Police Officer Matthew Richard Graham asked Erickson whether he had been drinking, Erickson responded that he wanted an attorney. Officer Graham also asked Erickson if he would perform sobriety tests; Erickson again asked for an attorney, and Officer Graham stopped speaking with him.

Once they arrived at the police station, Officer Graham again read Erickson his *Miranda* rights. Erickson responded that he wanted an attorney and that he had his attorney's business card in his wallet. Within 5 minutes, the officers were able to put Erickson in contact with an attorney, and Erickson spoke to the attorney while alone in a private room. About 10 to 15 minutes later, the officers heard Erickson fall to the floor and start screaming for help, asserting that the police had assaulted him. After the officers picked up Erickson, they explained to counsel what had happened and left the room to allow Erickson to continue to speak to counsel privately. After Erickson finished talking to counsel, the officers twice attempted to read him the implied consent warnings[3] for breath alcohol tests; he responded by stating that he needed a cab ride home. When the officers asked Erickson for a breath test, he responded, "Ah no, are you fucking stupid?" Clerk's Papers (CP) at 148. Erickson eventually passed out and was transported to the hospital.

## II. PROCEDURE

The City charged Erickson with physical control of a vehicle while under the influence; the case went to a jury trial in municipal court. The City's witnesses testified as described above.

---

[3] Anyone operating a vehicle in the State of Washington "is deemed to have given consent" to breath alcohol tests if the arresting officer has reasonable grounds to believe the defendant has been driving or was in actual physical control of a vehicle while under the influence. Former RCW 46.20.308(1) (2008). The implied consent warnings advise a defendant of the consequences should he refuse to take the test. Former RCW 46.20.308(2) (2008).

## A. TESTIMONY

During his direct testimony, Officer Graham testified about Erickson's numerous requests for an attorney, mentioning these requests five times while testifying about his contact with Erickson before Erickson was advised of his *Miranda* rights. For example:

> [City Attorney (CA)]: Okay. And when you contacted [Erikson in the patrol car] what did you do?
>
> [Officer Graham (W)]: I opened up the patrol vehicle. I contacted Mr. Erickson. I noted that his eyes were watery, droopy. His face was very flushed with color. Um I tried speaking with him. I noticed when he spoke the distinct overpowering odor of intoxicants were coming off of his breath. Um his speech was very slurred. His head was kind of bobbling back and forth. Um, I even noted at one point he was drooling. Um I you know I tried asking him some questions. *Ah wasn't getting much out of it other than he wanted an attorney.* Um.
>
> CA: Okay, did you did you ask him if he had anything to drink?
>
> W: I attempted to ask him but *all he would respond is that he wanted an attorney.*
>
> CA: Okay, so did you try to pursue any questioning when he asked for an attorney?
>
> W: I just asked if he would perform voluntary field sobriety tests. Which *all he kept saying was that he wanted an attorney.* And at that point we stopped.

CP at 134-35 (emphasis added).

After Graham testified about reading Erickson his *Miranda* rights, he further testified in part,

> CA: Okay. And did the defendant indicate he understood that?
>
> W: *All he would say is I need an attorney.*
>
> CA: Okay. So did you try to ask the defendant questions at that point?
>
> W: *Other than just if he had an attorney that he wanted me to contact.*
>
> CA: Okay. So you um it's fair to say you were not trying to investigate any and ask him questions about what happened?
>
> W: No.
>
> CA: And why was that?
>
> W: *He had requested an attorney.*
>
> CA: Okay. And then um did you get any information about an attorney that the defendant wanted?

> W: *He advised that he had a business card in his wallet that had ah his attorney's number on it.*

CP at 138 (emphasis added).

Officer Graham then testified that he made several attempts to contact the attorney and ultimately contacted counsel at the Department of Assigned Counsel. The officer then left the room and shut the door to allow Erickson to talk on the phone with counsel. About 10 to 15 minutes later, as recounted above, Officer Graham heard a "loud thud" and then heard Erickson "screaming for help." CP at 141. The officer reentered the room and Erickson "started screaming that the police had assaulted him." CP at 141. Officer Graham put Erickson back in the chair, talked to the attorney about what had just happened, and then left the room again to allow Erickson to continue to talk to counsel.

Officer Graham also testified about reading the implied consent warnings to Erickson and his subsequent refusal to give a breath test as described above. Officer Graham stated that he did not know if Erickson understood the implied consent warnings but that he did not ask for any clarification, ask to speak to a lawyer again, or otherwise indicate that he had not understood the warnings. Officer Graham also testified that when he arrived at the scene, the motorcycle was legally parked and was safely out of the roadway.

Erickson was the sole defense witness. He testified that he had given his keys to a friend at the start of the evening and, therefore, he could not have placed them in the motorcycle's ignition when he damaged Graham's car. He admitted, however, that he had been drinking that evening, that his memory was "foggy" because he had been drinking, and that the motorcycle "tipp[ed] over" at some point." CP at 182, 184.

## B. JURY INSTRUCTIONS AND CLOSING ARGUMENT

The trial court instructed the jury on the statutory affirmative defense:

It is a defense to physical control while under the influence if prior to being pursued by law enforcement officer the person causes the vehicle to be moved safely off the roadway. In determining whether a vehicle is safely off the roadway you may consider the location of the car, the extent to which the defendant maintained control over the vehicle, and any other evidence bearing on the question. The defendant has the burden of proving this defense by a preponderance of the evidence.

CP at 206.

In its closing argument, after noting that the officers had twice attempted to read Erickson the implied consent warnings, the City argued,

And we're also asking you to find that the defendant refused to take the breath test. . . . And so to prove that we have to show that ah the defendant expressed or showed some positive unwillingness to do this test. So how do we know that? Um the officer said Officer Graham had the defendant in the police station and he was there for quite a long time. And he told you he read the implied consent warning two times. That was a long list of things. . . . But just to be sure he did read it two times. *And then ah but prior to even reading the implied consent warning ah Officer Graham because the defendant wanted to talk to an attorney, put him in touch with the attorney and put him on speaker phone. When the attorney is on speakerphone the officer leaves the room to give him privacy. . . . And the officer said that he put the defendant in touch with the attorney at 9:49 p.m. and then that call ended at 10:09. That's twenty minutes. That's a long time. The defendant had plenty of time to talk to this attorney and ask questions, get advice or whatever he needed.* And then after the officer read the implied consent warning two times um or then he asked the ah defendant are you going to take this breath test? The first time he gets this response of I want a cab. I need a cab. And then there's he's unresponsive. He doesn't give an actual answer to the question yes or no. So the officer gets [sic] he's prepared to set up the machine. Everything is ready to go and asked him again. Will you take the breath test? And this time what does [he] say? No, are you f***ing stupid? I mean how much more do you need? There was no. So we have proved that the defendant is guilty of physical control while under the influence of intoxicating liquor. We've also proved that he refused the breath test. . . . So we're asking you to hold the defendant responsible for his actions on September 29th and find him guilty of the crime of being in physical control and also find that he refused the breath test.

6

CP at 219-22 (emphasis added). Erickson did not object to this argument. The City did not otherwise mention Erickson's requests for counsel.

Erickson argued that (1) the City had not proven its case because it had failed to prove that he had the keys and there was no proof that he could have moved the motorcycle without starting it, and (2) he had established the affirmative defense to the charge because Officer Graham had testified that the motorcycle was legally and safely parked before the officers arrived. The jury found Erickson guilty of physical control and found by special verdict that he had refused to submit to the breath test requested by law enforcement.

## C. APPEALS

Erickson appealed his conviction to the Pierce County Superior Court. He argued, *inter alia*, that (1) there was insufficient evidence to find that he was not safely off the roadway, and (2) the City improperly commented on his exercise of his *Miranda* rights.

The superior court affirmed the conviction. It held, in part,

1. There was sufficient evidence to convict Mr. Erickson of being in physical control of a motor vehicle while under the influence of alcohol. A rational trier of fact could have found Mr. Erickson failed to prove he was safely off the road by a preponderance of the evidence.
2. The City did not improperly comment on the exercise of the right to counsel; based on the facts of this case.

CP at 266.

Erickson moved for discretionary review with this court. We accepted review in part on the issues of whether (1) there was sufficient evidence supporting the jury's rejection of Erickson's affirmative defense, and (2) the City and its witnesses improperly referenced Erickson's requests for an attorney.

## DISCUSSION

### I. SUFFICIENCY OF EVIDENCE: AFFIRMATIVE DEFENSE

Erickson first argues that the superior court erred in ruling that a rational trier of fact could have found that he failed to prove the affirmative defense by a preponderance of the evidence. We disagree.

### A. LAW AND STANDARD OF REVIEW

We review a municipal court's decision according to the standards in RALJ 9.1. *City of Seattle v. May*, 151 Wn. App. 694, 697, 213 P.3d 945 (2009), *aff'd*, 171 Wn.2d 847, 256 P.3d 1161 (2011). We review the record before the municipal court; we review factual issues for substantial evidence and we review legal issues de novo. *May*, 151 Wn. App. at 697; *City of Bellevue v. Jacke*, 96 Wn. App. 209, 211, 978 P.2d 1116 (1999).

Actual physical control of a vehicle while under the influence of or affected by intoxicating liquor or any drug is a crime in the State of Washington. RCW 46.61.504(1). But there is also a statutory affirmative defense to that crime. RCW 46.61.504(2). This affirmative defense provides, "No person may be convicted under this section if, prior to being pursued by a law enforcement officer, *the person* has moved the vehicle safely off the roadway." RCW 46.61.504(2) (emphasis added). Erickson was required to prove this affirmative defense by a preponderance of the evidence. *State v. Votava*, 149 Wn.2d 178, 187, 66 P.3d 1050 (2003).

> When reviewing a challenge to the sufficiency of evidence based on an affirmative defense . . . , the inquiry is whether, considering the evidence in the light most favorable to the city, a rational trier of fact could have found that the accused failed to prove the defense by a preponderance of the evidence. *State v. Lively*, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996). Proof of a defense by a preponderance of the evidence merely means the greater weight of the evidence. *State v. Harris*, 74 Wash. 60, 64, 132 P. 735 (1913).

*City of Spokane v. Beck*, 130 Wn. App. 481, 486, 123 P.3d 854 (2005), *review denied*, 157 Wn.2d 1022 (2006).

## B. Sufficient Evidence

Erickson argues that the evidence proved the affirmative defense beyond a reasonable doubt because Officer Graham testified that the motorcycle was safely off the roadway when he arrived at the scene.[4] We disagree.

Here, although Officer Graham testified that the motorcycle was safely off the roadway when he arrived at the scene, a reasonable jury could have found that after Erickson reasserted control over the motorcycle, it only remained safely off the roadway without *Erickson's assistance*. Durham testified that Erickson put a key in the motorcycle's ignition before trying to upright it, that he did not voluntarily relinquish control over the motorcycle, and that he relinquished control only after a woman physically prevented him from getting back on. This evidence would allow a reasonable jury to conclude that although Erickson had initially moved the motorcycle safely off the roadway, he regained control of it when he left the bar, tried to drive the motorcycle away, but was prevented by a bystander. And the motorcycle remained safely off of the roadway only because someone else had intervened. *See City of Yakima v. Mendoza Godoy*, 175 Wn. App. 233, 305 P.3d 1100 (to be entitled to this affirmative defense instruction, defendant had to present some

---

[4] We note that Erickson does not argue that there was insufficient evidence to prove that he was in physical control of the motorcycle while intoxicated.

evidence that he or she in some way actively participated in moving or causing someone else to move the vehicle off of the roadway),[5] *review denied*, 178 Wn.2d 1019 (2013).

Although under *Votava*, a defendant can assert the affirmative defense if another person has moved the vehicle off the roadway *at the defendant's request*, that is not what happened here. 149 Wn.2d at 188. *Votava* held "that a defendant who has been charged with being in physical control of a vehicle while under the influence of alcohol is entitled to the defense . . . if the *defendant caused* the vehicle to be moved off the roadway even if the defendant did not personally drive the vehicle off the roadway." 149 Wn.2d at 188 (emphasis added). Erickson originally parked the motorcycle off of the roadway safely, but he returned to it after consuming alcohol and attempted to move the motorcycle. In so doing, he damaged another person's vehicle. The motorcycle was clearly not safe when Erickson was in control of it, and Erickson did not voluntarily cease his attempts to control the motorcycle. He stopped only when someone else, on her own initiative, prevented him from getting back on the motorcycle. Thus, we cannot say that Erickson "caused" the vehicle to be removed safely off of the roadway as the defendant in *Votava* did, and the evidence supports the jury's rejection of this affirmative defense.

---

[5] In *Mendoza Godoy*, another person drove the intoxicated defendant to the parked vehicle, and the defendant then sat alone in the vehicle while drinking a beer. 175 Wn. App. at 235. The Court of Appeals affirmed the trial court's refusal to give the affirmative defense instruction under these circumstances. *Mendoza Godoy*, 175 Wn. App. at 238.

## II. COMMENT ON RIGHT TO COUNSEL

Erickson next argues that the City or its witnesses improperly commented on his exercise of his right to counsel.[6] Even presuming, but not deciding, that the testimony and argument about Erickson's requests for and access to counsel were improper and that he has properly preserved these issues for review, we hold that the testimony and argument were harmless beyond a reasonable doubt.

Both the state and federal constitutions guarantee a criminal defendant the right to counsel. U.S. CONST. amend. VI; WASH. CONST. art I, § 22. Commenting on the defendant's exercise of his right to counsel can be improper. *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616-17 (3d Cir.), *cert. denied*, 414 U.S. 855 (1973).

Here, Officer Graham's testimony and the City's argument were arguably direct comments on Erickson's request for or access to an attorney. *See State v. Pottorff*, 138 Wn. App. 343, 346. 156 P.3d 955 (2007) ("A direct comment occurs when a witness or state agent makes reference to the defendant's invocation of his or her right to remain silent."). We review direct comments using the constitutional harmless error analysis in which the City bears the burden of showing the error was harmless. *Pottorff*, 138 Wn. App. at 347. A constitutional error is harmless when we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error and when the untainted evidence is so overwhelming it necessarily leads to a finding of guilt. *State v. Romero*, 113 Wn. App. 779, 794-95, 54 P.3d 1255 (2002).

---

[6] Again, we review a municipal court's decision according to the standards in RALJ 9.1. *May*, 151 Wn. App. at 697. We review the record before the municipal court; we review factual issues for substantial evidence and we review legal issues de novo. *May*, 151 Wn. App. at 697; *Jacke*, 96 Wn. App. at 211.

As to the substantive offense, the facts here do not show that the City attempted to use Officer Graham's testimony about Erickson's requests or access to counsel as substantive evidence of that crime or as evidence that would impeach his credibility. And there was ample uncontested evidence that Erickson was impaired (in fact, Erickson admitted he had been drinking), that he had attempted to move the motorcycle, that he repeatedly dropped the motorcycle, and that he relinquished his control of the motorcycle only when others interfered. Also, because the City did not argue that Erickson's requests for counsel were inconsistent with the acts of an innocent person, this evidence and argument did not undermine Erickson's defenses (that he did not have the motorcycle key and his affirmative defense).

As to the special verdict, again, the City did not argue that Erickson's requests for and contact with counsel were inconsistent with Erickson's innocence. Although the City argued that Erickson's request for and access to counsel was evidence that he had the opportunity to make a knowing and intelligent decision about whether to refuse the breath test,[7] this evidence is insignificant in light of the other evidence at trial. Specifically, the City presented evidence that the officers twice read him the implied consent warnings. But all the City had to prove was that Erickson had the *opportunity* to make a knowing and intelligent decision; and the other evidence overwhelmingly demonstrates that this was the case here. Thus, we hold that there was no reasonable probability that any comment on Erickson's exercise of his right to counsel contributed to the substantive or special verdicts.

---

[7] A defendant must have the "opportunity" to make a knowing and intelligent decision about whether to refuse to take a breath test. *See Medcalf v. Dep't of Licensing*, 133 Wn.2d 290, 299, 944 P.2d 1014 (1997); *State v. Elkins*, 152 Wn. App. 871, 876, 220 P.3d 211 (2009). The law does not require that the City prove that the defendant actually made a knowing and intelligent refusal. *Medcalf*, 133 Wn.2d at 299.

12

No. 44794-1-II

Because the evidence was sufficient to support the jury's verdict and any mention of Erickson's exercise of his right to counsel was harmless beyond a reasonable doubt, we affirm the superior court and the municipal court verdict.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.