STATE of Iowa, Appellee,

v.

Aaron Matthew PECK, Appellant.

No. 94–1353.

Supreme Court of Iowa.

Oct. 25, 1995.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, and Karl G. Knudson, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

Aaron Peck was convicted of first-degree burglary under Iowa Code sections 713.1 and 713.3 (1993). On appeal, he raises issues regarding (1) the sufficiency of the evidence on one of the elements of burglary, (2) the court's instruction on justification, and (3) the alleged ineffective assistance of his trial counsel. We affirm.

The defendant's wife commenced a dissolution-of-marriage proceeding and contemporaneously obtained a court order restraining the defendant "from coming upon any premises occupied by the petitioner and minor children...." The sheriff's deputy served a copy of the restraining order on the defendant at the time he served the original notice of the dissolution action.

Three days later, the defendant went to the house in which the couple had resided. His wife was in the house with her children and a nephew who was helping her move from the house. The defendant kicked in the door and assaulted the nephew.

## I. *Sufficiency of the Evidence.*

In ruling on a claim of insufficient evidence, we review the record in the light most favorable to the State. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984). The jury verdict is binding unless there is no substantial evidence to sustain it. *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984). The court considers both direct and circumstantial evidence in determining whether a "fair inference of guilt" and more than "speculation, suspicion, or conjecture" is raised. *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981).

Iowa Code section 713.1 defines the crime of burglary:

[A]ny person, having the intent to commit a felony, assault or theft therein, who, *having no right, license or privilege* to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

(Emphasis added.)

The first issue is whether sufficient evidence supports the jury's finding that the defendant did not have the "right, license or privilege" to enter the house. The house had been the marital home of the parties, but the defendant was at that time residing at some unknown location. His wife was in the process of moving to another community, but at the time of the incident she and the children were in this house.

Apparently, none of our cases have discussed the "right, license or privilege" language of section 713.1 under similar circumstances. The defendant concedes that under some circumstances a party may not have a right to enter a home, even if it is his own. He claims, however, that the restraining order did not prevent him from entering the house; it restrained him only from confronting his wife and the children, and they just happened to be in the home at the time. The State counters that the restraining order prohibited the defendant from confronting his wife or the children at any location, and this would necessarily include the house.

In an analogous case, we held that a person may be convicted of criminal mischief for destroying property owned with his spouse. *State v. Zeien,* 505 N.W.2d 498, 499 (Iowa 1993). In *Zeien,* the defendant was charged with criminal mischief for damaging contents of his estranged wife's home. Section 716.1 (1991) defined criminal mischief as actions "by one who has no right to so act." We rejected the husband's argument that because he had an ownership interest in the property he had the "right to so act." *Zeien,* 505 N.W.2d at 498–99.

Also, in *State v. Sylvester,* 516 N.W.2d 845, 848–49 (Iowa 1994), we held that a partner may be convicted of embezzling from her own partnership; and in *State v. Mann,* 463 N.W.2d 883, 884 (Iowa 1990), we held that a tenant, though possessing some ownership rights, could be convicted of criminal mischief as a result of damage done to the landlord's property.

As we acknowledged in *Zeien,* criminal statutes are to be construed in the defendant's favor, but they must be construed reasonably and in such a way as to not defeat their plain purpose. *Zeien,* 505 N.W.2d at 499. Public policies underlying our decision in *Zeien* apply to the present case as well. Application of our burglary law in these circumstances will tend to discourage domestic violence and promote security in the home.

Cases from other jurisdictions support the application of burglary statutes under analogous circumstances. *See, e.g., People v. Davenport,* 268 Cal.Rptr. 501, 219 Cal.App.3d 885 (1990); *Ellyson v. State,* 603 N.E.2d 1369 (Ind.Ct.App.1992); *State v. Dively,* 431 N.E.2d 540 (Ind.Ct.App.1982); *People v. Pohl,* 202 Mich.App. 203, 507 N.W.2d 819 (1993); *State v. Stallings,* 812 S.W.2d 772 (Mo.Ct.App.1991); *People v. DeLarosa,* 172 A.D.2d 156, 568 N.Y.S.2d 47 (1991); *People v. Jones,* 169 A.D.2d 986, 565 N.Y.S.2d 262 (1991); *Stanley v. State,* 631 S.W.2d 751 (Tex.Crim.App.1982); *Ex parte Davis,* 542 S.W.2d 192 (Tex.Crim.App.1976); *State v. Teynor,* 141 Wis.2d 187, 414 N.W.2d 76 (1987).

■ Peck distinguishes these cases on the ground that this house was the marital residence of the parties rather than the separate property of the victim-spouse as in several of the cases set out above. He contends that he had paid the rent on this house and therefore had a "greater right" to possession. It is true that the occupant of a home ordinarily would have the right to enter and therefore could not be guilty of burglary. This is consistent with the common-law rule:

> There is no breaking in entering a building or room, and therefore no burglary, if the person entering has a right so to do, although he may intend to commit, and may actually commit, a felony, and although he may enter in such a way that there would be a breaking if he had no right to enter. This is the case of a servant, or boarder, or joint occupant of a room, with the right to enter.

12A C.J.S. *Burglary* § 23, at 202–03 (1980).

■ We reject the defendant's argument that he necessarily had the right of entry because he had the "greater right" of possession. Because of the court order, he had no right to enter "*any* premises occupied by the petitioner and minor children." (Emphasis added.)

Again, under the general rule, a person who has a general right of entry

> is guilty of burglary ... if he exceeds his rights either with respect to the time of entering or the place into which he enters. So, a servant, employee, or a guest or boarder, with the right to be in the building or room, may be convicted of burglary on proof that he broke and entered at a time or place beyond his authority, or remains at a time or place beyond his authority.

*Id.* at 203.

By his own testimony, the defendant knew that the children, and presumably his wife, were in the house before he entered it. Entering the home under these circumstances was expressly prohibited by the restraining order.

We conclude that substantial evidence supported the jury's verdict that the defendant lacked the right to enter the premises.

## II. *The Justification Instruction.*

The defendant raises an issue regarding the legal sufficiency of this instruction given by the court:

Instruction No. 27

The defendant claims he acted with justification.

A person may use reasonable force to prevent criminal interference with his property. The use of this force is known as justification. *Justification is only available as a defense to element number 6 of Burglary in the First Degree (instructions number 15 & 16).*

The State must prove the defendant was not acting with justification.

(Emphasis added.)

Specifically, he complains that the court should not have limited the defense of justification to element six, *i.e.,* that "he intentionally or recklessly inflicted bodily injury." He contends that the justification defense should

also apply to another element of the offense: that he broke or entered "with the specific intent to commit an assault." *See* Iowa Code § 713.1.

█ The general rule is that the owner of property may justify an assault on the ground that he acted in defense of his property against an unlawful invasion. 6 Am. Jur.2d *Assault and Battery* § 81, at 73 (1963).

However,

> [i]n defending one's property the owner may only use such force as appears reasonably necessary for that purpose, and must stop short of endangering the life of his adversary or of putting his adversary in danger of suffering great bodily harm except, according to some authorities, where he acts in a legitimate attempt to prevent a felony against himself or his property, or in urgent or extreme cases. The person whose property right is assailed must first use moderate means before resorting to extreme measures in its defense and he may not use force for the protection of his property after the necessity for such protection has passed.
>
> Ordinarily, whether excessive force has been used in defense of property is a question of fact to be determined by the jury.

*Id.* § 88, at 77; *accord* 94 C.J.S. *Assault and Battery* § 94, at 485–86 (1975) (justification limited to reasonably necessary force).

In Iowa, the justification defense is codified in section 704.4, which provides in part:

> A person is justified in the use of reasonable force to prevent or terminate criminal interference with the person's possession or other right in property.

"Reasonable force" in turn is defined by section 704.1 as

> that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another. . . .

█ It is clear that at the time of entry the defendant could not have known whether his property was being threatened. While he might have suspected this,

> [t]o justify a resort to force in defense of property, the danger should be such as to induce one exercising reasonable and proper judgment to interfere to prevent the consummation of the injury; the mere suspicion or fear of encroachment is not justification for the use of force. The necessity, however, need not be real; it need be only reasonably apparent and the resistance offered be in good faith.

6A C.J.S. *Assault and Battery* § 94, at 486 (1975). In this case, the defendant's entry preceded any knowledge on his part of threats to his property, and therefore, it could not have been "reasonable" as a matter of law. The court properly denied the expanded instruction.

### III. *The Ineffective–Assistance Claims.*

The defendant claims he received ineffective assistance of counsel for two reasons: his lawyer failed to (1) preserve error on the trial court's failure to submit instructions on alleged lesser included offenses, and (2) raise a double jeopardy argument.

A. *The included offenses.* The marshaling instruction on first-degree burglary told the jury:

Instruction No. 15

In order to convict the defendant of Burglary in the First Degree by Breaking [or by entering, under Instruction No. 16], the State must prove all of the following elements:

1. On or about 11th day of January, 1994, the defendant broke [or entered] into a residence at 1420 130th Ave., Castalia, Iowa.

2. The residence was an occupied structure as defined in Instruction No. 23.

3. The defendant did not have permission or authority to break into the residence.

4. Persons were present in the residence.

5. *The defendant did so with the specific intent to commit an assault.*

6. *After the defendant broke in, he intentionally or recklessly inflicted bodily injury on Richard Onken.*

(Emphasis added.)

The defendant complains that he was entitled to lesser included offense instructions on attempted burglary, assault causing bodily injury, and simple assault. The State concedes that an instruction on attempted burglary would have been required, if the defendant had requested it. *State v. Blanton,* 454 N.W.2d 901, 902 (Iowa App.1990). It argues, however, that assault causing bodily injury and simple assault are not included offenses, so any failure on the part of the defendant's lawyer to request them could not amount to a breach of the lawyer's duty of care. The State also contends that the defendant has failed to show he was prejudiced by any failure to request included offenses.

■ To determine whether assault causing bodily injury and simple assault should have been submitted, we look to the statutory elements of each offense. *State v. Jeffries,* 430 N.W.2d 728, 740 (Iowa 1988). Under this test, in order to be a lesser included offense, the offense must be composed solely of some but not all of the elements of a greater offense. *Id.* at 736. In other words, the greater offense must be impossible to commit without committing the lesser offense. *Id.* at 730.

The jury was required to find, for first-degree burglary, that the defendant "intentionally or recklessly inflict[ed] bodily injury on any person." Iowa Code § 713.3. The State contends that assault causing bodily injury and simple assault are not included offenses because they both require intent while first-degree burglary requires that the act be intentional or *reckless. See* Iowa Code §§ 713.1, 713.3.

■ The "intent" in assault causing bodily injury, Iowa Code § 708.2(2), and in simple assault, Iowa Code § 708.1, refers to a general, not specific, intent. *See State v. Ogan,* 497 N.W.2d 902, 903 (Iowa 1993) (assault causing bodily injury); *State v. Brown,* 376 N.W.2d 910, 913–14 (Iowa App.1985) (simple assault).

■ The "reckless" alternative for first-degree burglary connotes that the act was not done with specific intent, but

> fraught with a high degree of danger ... so obvious from the facts that the actor knows or should reasonably foresee that harm will probably ... flow from the act.

*State v. Torres,* 495 N.W.2d 678, 681 (Iowa 1993) (recklessness in context of involuntary manslaughter).

■ We conclude that it would be impossible to commit first-degree burglary by "intentionally or recklessly" injuring another without also committing assault or assault causing injury because all of these crimes involve general intent. If the defendant had requested an instruction on these included offenses, he would have been entitled to them.

■ The present record is not complete with respect to the ineffective-assistance issues. We do not know, for example, whether it was his counsel's strategy to present an "all or nothing" defense. Trial counsel should be given the opportunity to explain any strategy in regard to the included-offense issue, and we therefore reserve it for postconviction proceedings. *See State v. Axline,* 450 N.W.2d 857, 860 (Iowa 1990).

The State argues that the defendant could not have been prejudiced in any event. The defendant counters that the theory of his defense was that, even if the jury had found that he had committed an assault, it might not have found him guilty of the greatest offense, first-degree burglary, if it had other, less serious options from which to choose. It is true that the jury found the elements of first-degree burglary, and we have found no error with respect to that finding. Nevertheless, we have said under analogous facts that

> it is always possible for the State to argue that, if the conviction of the greater offense is otherwise error free, the failure to submit a lesser-included offense is harmless error.

Logically this argument has much to recommend it. A severable error-free adverse verdict on a factual issue which would be required to vindicate an addition-

al legal theory has been recognized in other situations as a predicate for harmless error. This has not been the case, however, with respect to issues involving lesser-included offenses in criminal cases. The distinction undoubtably rests on the belief, seldom articulated, that if the jury had been given an alternative it might have reached a different result. While this approach involves a certain degree of supposition, it is a view that has been consistently applied.

*State v. Turecek,* 456 N.W.2d 219, 222 (Iowa 1990).

We cannot conclude as a matter of law that prejudice was not established and therefore reserve that issue for postconviction proceedings as well.

B. *The double jeopardy argument.* Peck complains that he received ineffective assistance of counsel because of a failure to raise a claim of double jeopardy.

Peck was apparently sentenced to seven days in jail for contempt for violating the restraining order. There is some question about whether Peck stipulated that he would not raise the double jeopardy issues as a part of a bargain, but the record is not clear. Peck now maintains that he did not knowingly waive any double jeopardy argument.

 A civil contempt finding may bar later criminal proceedings. *United States v. Dixon,* 509 U.S. ——, —— - ——, 113 S.Ct. 2849, 2857–2858, 125 L.Ed.2d 556, 570 (1993). However, a double jeopardy argument may be waived. *State v. Butler,* 505 N.W.2d 806, 807–08 (Iowa 1993). The State and the defendant agree that it is impossible to resolve the double jeopardy argument on the present record and therefore request that the issue be reserved.

We affirm but reserve the defendant's ineffective-assistance-of-counsel claims for possible postconviction proceedings.

**AFFIRMED.**