# IN THE COURT OF APPEALS OF IOWA

No. 19-1426
Filed October 21, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ISAAC CHARLES BROWN III,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Colleen D. Weiland, Judge.

Isaac Brown III appeals his conviction for burglary in the first degree and willful injury causing serious injury. **AFFIRMED.**

Dylan J. Thomas, Mason City, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Isaac Brown III appeals his conviction for burglary in the first degree and willful injury causing serious injury. He argues the evidence is not sufficient to support his conviction, the weight of the evidence does not support his conviction, the trial court should not have admitted prior-bad-act evidence, the prosecutor committed misconduct in referring to the complaining witness's scarring, and the court abused its discretion in rejecting his evidence of the seriousness of injury. He also raises multiple ineffective-assistance-of-counsel arguments. We find we lack authority to consider his ineffective-assistance claims, reject his remaining claims on the merits, and affirm.

## I.    Background Facts and Proceedings.

On February 17, 2018, Brown and two other men[1] entered a house in Charles City owned by Judy Davis. Inside the house at the time were Lentenze Farris, Megan Mason, and several minor children. Farris paid rent to Davis to live in the basement of the house.[2] Mason testified Brown entered the home after he contacted Davis about getting Tylenol from her, and Brown confronted and pushed Mason when he encountered her.[3] Farris testified he then told the three men to leave, and the men left through the front door without further incident.

---

[1] One of the men accompanying Brown was Eric Sanders. Brown and Sanders were co-defendants at trial, after which the jury found Sanders guilty of burglary in the second degree and assault causing bodily injury.

[2] Mason testified she did not live in the house at the time and she was supervising the home and children while Davis worked. However, Davis testified Mason lived in the house rent-free at the time. Whether Mason lived in the house at the time does not affect the outcome of this case.

[3] Mason testified she was previously in a romantic relationship with Brown.

Later that day, Farris was sitting in his car outside the house, about to pick up food for the household, when he saw the three men enter the house through the front door again. According to Farris's testimony, one of the children soon ran to the house's side door yelling for help. Farris ran into the house and into the basement, where he saw Brown choking Mason. Farris tried to separate Brown and Mason, and Brown began attacking Farris. Brown hit Farris in the head multiple times with glass bottles, shattering the bottles. Brown then swung an electric space heater at Farris, striking Farris in the hands and forearms as he attempted to block the heater. Farris remembered seeing "a lot of blood on the ground" as a neighbor broke up the fight. The three intruders left the house, and Farris felt "weak" and "dizzy" as he walked upstairs and outside the house to meet law enforcement. Farris was transported by ambulance to the county hospital for treatment of his injuries, where he received stitches in both hands. At the time of trial, Farris had scars on both hands and permanent nerve damage in his left thumb. He testified, "I can't move my thumb."

The State charged Brown with burglary in the first degree and willful injury causing serious injury. The matter proceeded to trial, after which the jury found Brown guilty as charged. The district court sentenced him to indeterminate terms of incarceration not to exceed twenty-five years on the burglary charge and ten years on the willful-injury charge, run concurrently, plus a fine and restitution. Brown appeals.

## II.     Ineffective Assistance of Counsel.

Brown argues he received ineffective assistance of counsel on several grounds, including that his counsel failed to object to specific references during

trial to the no-contact order between Brown and Mason and failed to request additional jury instructions regarding the elements of his charges. Brown's judgment and sentence was entered on August 26, 2019. On July 1, 2019, new legislation took effect that prohibited ineffective-assistance-of-counsel claims "on direct appeal from the criminal proceedings." 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2019)). Because Brown's judgment and sentence was entered after the effective date of this legislation, "we lack authority to consider [his] ineffective-assistance-of-counsel claims on direct appeal." *State v. Damme*, 944 N.W.2d 98, 109 (Iowa 2020).

### III. Sufficiency of the Evidence.

Turning to the merits of Brown's remaining claims on appeal, he challenges the sufficiency of the evidence supporting his conviction on both charges.

> Sufficiency of evidence claims are reviewed for . . . correction of errors at law. In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. [W]e will uphold a verdict if substantial record evidence supports it. We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence.

*State v. Sanford*, 814 NW.2d 611, 615 (Iowa 2012) (second and third alteration in original) (citations and internal quotation marks omitted).

### A.    The Burglary Charge.

Brown begins by challenging his conviction for burglary in the first degree. Iowa Code §§ 713.1, .3 (2018).  The jury instructions set forth the elements the State was required to prove:

1.    On or about February 17, 2018, the defendant broke into or entered a residence.
2.   The residence was an occupied structure.
3.   One or more persons were present in the occupied structure.
4.   The defendant did not have permission or authority to enter the residence.
5.   The residence was not open to the public.
6.   The defendant broke into or entered the residence with the specific intent to commit an assault.
7. During the burglary, the defendant intentionally or recklessly inflicted bodily injury on Lentenze Farris.

First, Brown argues the evidence is insufficient to prove he "did not have permission or authority to enter the residence."  Brown notes Farris merely rented the basement of the house while Davis, who owned the house, gave Brown permission to enter the premises.

The evidence does not support Brown's claim Davis gave Brown broad permission to enter the house any time.  While Davis testified she gave Brown permission to enter, her testimony on the extent of the permission was vague:

Q. So [the three men] were always welcome in your home.
A. Especially [Brown].  He was a good dad.
Q. And that welcome was even when you weren't present.
A. Yeah.
Q. So they were allowed to enter your home when you weren't present. A. Yeah.  I mean, they—it's not like—they were allowed there at all times.  They had never done anything disrespectful or wrong in my home.  They were always welcome.

The fact Brown was "always welcome" does not support a finding that Davis gave Brown absolute permission to enter her house at any time.  Conversely, Farris's

testimony about confronting Brown and telling him to leave soon after he first entered the house—and Brown immediately complying—supports a finding that Brown did not have absolute permission to enter Davis's house.

Furthermore, even if Davis as the owner gave Brown absolute permission to enter the house, the purpose of the burglary statute is "to protect the security of *occupancy*, rather than ownership rights, and to promote personal safety." *State v. Hagedorn*, 679 N.W.2d 666, 670 (Iowa 2004). Farris indisputably had permission to occupy the house as Davis's tenant, and this possessory interest is entitled to protection under the burglary statute. *See id.* at 671. Our supreme court has rejected the argument one person has a greater interest in property that can defeat another's possessory interest, instead finding a person with general permission to enter a residence may be guilty of burglary if the person breaks and enters or remains in the home "at a time or place beyond his authority." *State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995) (quoting 12A C.J.S. *Burglary* § 23, at 202–03 (1980)). Therefore, even if Davis gave Brown general permission to enter the house, Farris's testimony is sufficient to prove Brown exceeded this permission by entering the basement at the time.

Second, Brown argues the evidence is insufficient to prove he "entered the residence with the specific intent to commit an assault."[4] Brown points to Davis's testimony that Mason had his phone that day, which he asserts shows he only

---

[4] According to the jury instructions:

> An "assault" is committed when a person does an act which is meant to cause pain or injury or result in physical contact which will be insulting or offensive or place another person in fear of immediate physical contact which will be painful, injurious, insulting or offensive to another person, when coupled with apparent ability to do the act.

entered Davis's house to retrieve his phone. Brown also points to Mason's deposition testimony that Brown only put his hands on Mason's shoulders before Farris entered the basement as proof Brown had no intent to commit assault before Farris confronted him. Such arguments are for the jury in weighing the evidence. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Mason testified to the existence of a no-contact order between her and Brown that named her as the protected party.[5] Davis testified the relationship between Mason and Brown was so strained that Davis acted as a go-between for them. Mason and Farris testified Brown began choking Mason soon after Brown entered the house the second time. This testimony provides substantial evidence to support the finding that Brown entered the house with the specific intent to commit assault.

Third, Brown argues the evidence is insufficient to prove he "intentionally or recklessly inflicted bodily injury[6] on" Farris. In doing so, Brown points to inconsistencies in the testimony. While the testimony differed somewhat in the exact events and severity of Farris's injuries, Farris, Mason, and the neighbor all testified they saw Brown strike Farris with the space heater and Farris was bloodied after the encounter. Photographs of the injuries and medical records support the severity of the injuries, and Farris testified to the lingering effects. This evidence is sufficient to prove Brown intentionally or recklessly inflicted bodily

---

[5] We address the general admissibility of the no-contact order in section V below.
[6] The jury instructions defined "serious injury" as "a bodily injury which creates a serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ."

injury on Farris, and we find the evidence overall sufficient to prove Brown committed burglary in the first degree.

## B.    The Willful-Injury Charge.

Brown also challenges the sufficiency of the evidence to convict him of willful injury causing serious injury.[7]  Brown specifically challenges the evidence of his intent and that he caused a serious injury—"serious permanent disfigurement or extended loss or impairment of" a body part.   Brown points to conflicting evidence on the extent of Farris's scarring and evidence Farris failed to seek additional medical treatment to mitigate any permanent damage.

Regarding intent, the jury could infer intent from the circumstances surrounding the brutal attack.  *See State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004) ("[A]n actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act.").  Regarding the serious injury, Farris testified about the extent of his injuries and showed his scars to the jury, and the jury was entitled to accept this evidence as proof of serious injury.  *See State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010) (stating scarring is evidence for the jury to consider in deciding whether serious injury occurred).  As stated above, photographs and medical records also document the extent of his injuries.  Brown is criminally liable for the injuries that are the natural result of his

---

[7] The jury instructions set forth the elements the State was required prove to convict Brown of willful injury resulting in serious injury:

>    1. On or about February 17, 2018, the defendant committed an act against Lentenze Farris.
>    2. The defendant specifically intended to cause a serious injury to Lentenze Farris.
>    3. The defendant's act caused a serious injury to Lentenze Farris.

actions, and Farris allegedly failing to pursue additional medical treatment is not a superseding cause of injury that excuses Brown's liability. *See State v. Garcia*, 616 N.W.2d 594, 597 (Iowa 2017) (stating "[a] defendant can be relieved of criminal responsibility if an intervening act breaks the chain of causal connection" but "the intervening act must be the *sole* proximate cause"); *see also State v. Lenz*, 2017 WL 6516867, at *8 (Iowa Ct. App. Dec. 20, 2017) ("[The victim's] failure to follow her physician's instructions following surgery was not the sole proximate [cause] of her injuries. Rather, Lenz was responsible for the ultimate injury."). We find this evidence sufficient to prove Brown committed willful injury causing serious injury.

### IV. Weight of the Evidence.

Brown also challenges his conviction under the weight-of-the-evidence standard. The district court denied Brown's motion for new trial on weight-of-the-evidence grounds, and we review this denial for abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

> The weight-of-the-evidence standard requires the district court to consider whether more credible evidence supports the verdict rendered than supports the alternative verdict. It is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses. Nonetheless, it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered. The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether a greater amount of credible evidence suggests the verdict rendered was a miscarriage of justice.

*Id.* (citations and internal quotation marks omitted).

Brown repeats many of his arguments addressed above, arguing the weight of the evidence shows Davis gave him permission to enter her house, he entered the house to retrieve his phone and not with intent to commit an assault, eyewitnesses to the altercation provided differing accounts, and the evidence of serious injury was too weak to be conclusive. The district court noted the same evidence discussed above in finding the weight of the evidence supports all elements for both charges. We find no abuse of discretion in denying Brown's motion for new trial.

## V.    Prior Bad Act.

Brown next challenges the court's decision to admit prior-bad-act evidence in the form of testimony about the no-contact order between Brown and Mason.[8] We review the admissibility of prior-bad-act evidence for abuse of discretion. *Taylor*, 689 N.W.2d at 124.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). However, evidence of a prior bad act is admissible for certain other purposes, including proving intent. Iowa R. Evid. 5.404(b)(2). "Thus, when a prosecutor seeks to introduce evidence

---

[8] This section of our ruling applies to the district court's denial of Brown's motion in limine to exclude evidence of the no-contact order. As addressed in section II above, Brown did not object to specific references to the no-contact order by witnesses and the State during trial to preserve the issue for our review, and we have no authority to consider these specific utterances under an ineffective-assistance-of-counsel framework on direct appeal. *See Damme*, 944 N.W.2d at 109; *see also State v. Dahlstrom*, 224 N.W.2d 443, 449 (Iowa 1974) (stating a defendant must ordinarily move for mistrial at the time of the alleged misconduct on the basis of an unfair trial to preserve the issue for appellate review).

of a defendant's prior misconduct, the evidence must be probative of 'some fact or element in issue other than the defendant's criminal disposition.'" *Taylor*, 689 N.W.2d at 123 (quoting *State v. Castaneda*, 621 N.W.2d 435, 440 (Iowa 2001)). "If a court determines prior-bad-acts evidence 'is relevant to a legitimate factual issue in dispute, the court must then decide if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant.'" *Id.* at 124 (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)).

At trial, the State sought to introduce evidence of a no-contact order to prove Brown's intent when entering the house. The State assured the court it was "not seeking to introduce the actual underlying facts of other . . . incidents that have happened between Mr. Brown and Ms. Mason." Instead, the State only sought "to introduce the fact that there was a no-contact order in place on . . . February 17, 2018." The court denied Brown's motion in limine and permitted the evidence, finding "the probative value for the purpose [the State] has stated is higher than the prejudicial value, especially in the manner that it's going to be limited."

We agree the existence of the no-contact order is highly relevant as to intent. Brown knew Mason was in the house after he first entered that day, and the existence of the no-contact order is relevant evidence supporting the conclusion he intended to engage in conduct that was at least insulting or offensive when he returned. The stated purpose of only introducing the existence of the no-contact order to prove intent limits the danger of unfair prejudice. *Accord Taylor*, 689 N.W.2d at 123 n.4 (stating the defendant's awareness of the no-contact order "is highly probative of whether he knew his actions would be insulting or offensive" and, because the order did not provide details on any prior assaults or threats, "the

prejudicial impact of this document was minimal"). While neither Farris nor Mason's residence are apparently named in the no-contact order,[9] the order remains relevant as to Brown's intent when he entered the house while he knew Mason was present. We find no abuse of discretion in the admission of evidence of the no-contact order.

### VI. Prosecutorial Misconduct.

Brown argues the State committed misconduct during closing arguments when the State erroneously referred to scarring as evidence of serious injury.[10] We review claims of prosecutorial misconduct for abuse of discretion. *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011). "[T]o prevail on a claim of prosecutorial misconduct, the defendant must show both the misconduct and resulting prejudice." *Id.* at 526.

Brown points to three statements the State made during closing arguments:

> And so what were the injuries that Mr. Farris had? Well, we know that he had scarring. He tried to point it out when he was here in front of you in the courtroom on his hand by his pinky where he had stitches and also on his hand where he had that tendon injury. He pointed to the scarring.
> Now Judy Davis—she even testified that he had scarring on his hands from this incident. That's something that's a permanent disfigurement. It's not going to go away. It will be a reminder for the rest of his life of what happened.

---

[9] The no-contact order itself is not in the record.

[10] The State contests error preservation on the claim of prosecutorial misconduct. Ordinarily, a defendant must "move for a mistrial at the time of the alleged misconduct" to preserve the issue for our review. *Dahlstrom*, 224 N.W.2d at 449. The parties engaged in a thorough discussion of scarring in a sidebar with the court immediately following closing arguments. The court rejected Brown's concerns at that time, deciding "to just leave it alone and see what result we get" from the jury. Brown's post-trial motion then raised the prosecutor's comments as grounds for new trial, which the court denied. We find Brown's actions sufficient to preserve error.

> . . . And so it fits in together and it shows that there was a serious injury; that he had serious permanent disfigurement, the scarring, and then also had lost the function of his hand and can't do all of the things that he used to be able to do with his hand.
>
> . . . .
>
> . . . [Davis] also said that when she saw Mr. Farris this summer that she saw scars on his hands from the incident.

As discussed above, scarring is not per se evidence of serious injury, but it is evidence for the jury to consider in determining whether a serious injury occurred. *See Hanes*, 790 N.W.2d at 554. In rejecting Brown's claims at the end of closing arguments, the district court found the State's references to scarring were part of the State's "urging that that's the finding the jury makes." We agree the State referred to scarring as part of its arguments for the jury to decide whether the facts satisfied the elements of the crimes charged, and we find no misconduct in these comments.

## VII.    Additional Evidence.

Finally, Brown challenges the district court's refusal to admit additional witness testimony and photographs regarding Farris's use of his thumb during trial. We review the admissibility of evidence for abuse of discretion. *State v. Babers*, 514 N.W.2d 79, 82 (Iowa 1994).

After the conclusion of the State's evidence, Brown sought to introduce testimony from a witness who took "pictures of Mr. Farris [earlier in the trial] in front of the courthouse." Brown also sought to introduce copies of those photographs, which his attorney said show Farris "carrying a bag in his left hand with his thumb on the bag and carrying it."[11] Brown sought to introduce this evidence for "the sole

---

[11] Brown did not make an offer of proof regarding the witness or the photographs. The State does not contest error preservation, which may be because the nature

purpose . . . of impeachment as to [Farris's] claim that he has some type of permanent injury."

A criminal defendant is generally entitled to depose all State witnesses. Iowa R. Crim. P. 2.13(1). The defendant in turn generally must file a written list of all defense witnesses, who are subject to deposition by the State. Iowa R. Crim. P. 2.13(3). If the defendant fails to disclose any witnesses at least nine days before trial, the district court may order sanctions "as it deems just under the circumstances," including, "if [the court] finds that no less severe remedy is adequate to protect the state from undue prejudice, order the exclusion of the testimony of any such witnesses." Iowa R. Crim. P. 2.13(4).

Brown first provided notice of this additional evidence during trial, generating a substantial risk of prejudice to the State after the State already finished presenting its evidence. Brown provided no reason at trial why he could not have provided timely notice of similar evidence.[12] The State raised several concerns with this evidence at trial, including that this witness may have observed at least part of the trial already, potentially influencing her testimony. The State also questioned the relevance of the evidence, asserting Farris being able to hold

---

of the excluded evidence was apparent from the record. Ordinarily, failure to make an offer of proof leaves nothing for us to review, but there is an exception when the nature of the excluded evidence is apparent from the record. *See Brooks v. Holtz*, 661 N.W.2d 526, 529–30 (Iowa 2003); *State v. Ritchison*, 223 N.W.2d 207, 212–13 (Iowa 1974); *State v. Buckner*, 214 N.W.2d 164, 168 (Iowa 1974).

[12] In his brief to us, Brown speculates his defense may have been "genuinely surprised to hear [Farris's] claim during testimony that he still could not use his thumb," may not have "had access to Mr. Farris prior to trial in order to observe his use of his thumb," and trial "may have been the only opportunity anyone associated with the defense had to observe [Farris's] use of his thumb." The record contains no evidence to support these assertions, and we do not consider them.

a bag with his injured thumb does not contradict his earlier testimony that he "can't move [his] thumb." Brown faults the district court for not detailing its reasons for rejecting other less severe sanctions, but the court is not required to produce such detailed findings. *See Babers*, 514 N.W.2d at 82. We find no abuse of discretion in the court's refusal to admit this late evidence.

## VIII. Conclusion.

We have no authority to consider Brown's ineffective-assistance-of-counsel claims. We find sufficient evidence to support Brown's conviction of both charges. We further find the district court did not abuse its discretion in denying a new trial on weight-of-the-evidence grounds, admitting evidence of a no-contact order, rejecting claims of prosecutorial misconduct for referencing scarring, and refusing to admit evidence of the extent of injury noticed at trial.

**AFFIRMED.**