[No. 43435-7-I.    Division One.    June 21, 1999.]

THE CITY OF BELLEVUE, *Petitioner*, v. LINDA K. JACKE, ET AL., *Respondents*.

*Richard L. Andrews, City Attorney*, and *Jerome Yoshio Roache, Assistant*, for petitioner.

*Walter G. Palmer, Inc., P.S.*, by *Walter G. Palmer, Jr.*, and *Peggy Sue Juergens*, for respondents.

ELLINGTON, J. — Only on rare occasions does the criminal law concern itself with the community or separate character of marital property. A domestic violence prosecution is not one of those occasions.

### Facts[1]

In September, 1997, Ruth Chattin's husband moved out of the marital home and into an apartment. In January, 1998, Ms. Chattin arrived uninvited at Mr. Chattin's apartment. She remained there despite her husband's request that she leave. When he attempted to remove her from the apartment by grabbing her shoulders, Ms. Chattin kicked him in the groin.

Ms. Chattin was charged with domestic violence assault under Bellevue City Code 10A.36.010.[2] Relying on *Seizer v. Sessions*,[3] a case involving the respective rights of a

---

[1]This case has not yet been tried. We recite the facts as they were represented to the court during motions in limine.

[2]RCW 10.99.020(3) sets forth a nonexclusive list of crimes that are crimes of domestic violence when committed by one family or household member against another. The various degrees of assaults listed are those under the state penal code, RCW 9A.36.011-.041. It follows that assault as defined under the Bellevue City Code also constitutes a crime of domestic violence when committed by one family or household member against another.

[3]132 Wn.2d 642, 940 P.2d 261 (1997) (holding that RCW 26.16.140, which provides that the earnings and accumulations of separated spouses are the sepa-

decedent's former wives, the district court determined that because Ms. Chattin testified in pretrial proceedings that she did not believe the marriage was over, the marriage was not "defunct." From this, the court concluded that Mr. Chattin's apartment was community property,[4] that Ms. Chattin had the right to be in the apartment, and that she thus had the right to resist her husband's attempts to remove her. The court viewed this issue as relevant to Ms. Chattin's theory of self defense.

The City sought interlocutory review of this ruling by writ of certiorari. The superior court agreed with the district court's reasoning, and denied the writ on the ground that the City failed to show clear error of law. The court concluded that the evidence supported the district court's conclusion that the marriage was not defunct. We granted discretionary review.

## Discussion

■■ We review the record before the district court.[5] We review legal issues de novo and factual issues for substantial evidence.[6] Our decision rests entirely on legal issues.

■ Counsel for Ms. Chattin conceded at oral argument that whether Mr. Chattin's apartment is community or separate property has no relevance to the determination of Ms. Chattin's guilt under the ordinance under which she was charged. The concession was well taken.[7]

---

rate property of each, applies only when there is mutuality such that the abandoned spouse either accepts the futility of hope for the relationship, or acquiesces in the separation).

[4]Initially, Mr. Chattin used community funds to pay the rent and security deposit. He replaced those funds with separate funds he received through inheritance and is apparently now paying the rent from his own income.

[5]*State v. Nordstrom*, 89 Wn. App. 737, 741, 950 P.2d 946 (1997).

[6]RCW 7.16.120; *see also North/South Airpark Ass'n v. Haagen*, 87 Wn. App. 765, 769, 942 P.2d 1068 (1997), *review denied*, 134 Wn.2d 1027 (1998).

[7]In light of Ms. Chattin's concession, we need not and do not address her argument that the district court's finding that Mr. Chattin's apartment was community property is supported by substantial evidence. Further, we reject Ms. Chattin's contention that if the characterization of the apartment as community

We find no basis in case law, statute, or public policy for the proposition that community property principles have a place in the determination of a criminal defendant's guilt or innocence of the crime of assault. Community property concepts, and the distinction between separate and community property, are relevant in many circumstances, such as, for example, when a court in a dissolution proceeding must dispose of the parties' property,[8] when a court must determine if a debt is a community or separate debt,[9] or when a court is called upon to distribute the estate of a deceased spouse.[10] They are not, however, ordinarily relevant to the determination of a defendant's guilt or innocence under a criminal statute or ordinance, particularly one involving violence.

Counsel for Ms. Chattin also conceded at oral argument that Mr. Chattin has a superior possessory interest in the apartment in which he was living. Again, the concession was well taken.

Ms. Chattin does not dispute that, with respect to the apartment, only her husband is the tenant. As the sole tenant, Mr. Chattin's right of possession is exclusive for the duration of the leasehold. Except in specifically defined, narrow circumstances unrelated to whether the premises are separate or community property,[11] a tenant may lawfully exclude others from the leased premises. Where one spouse is the sole tenant, his or her right to exclusive pos-

property were error, it was harmless because the error would have no effect on the outcome of the trial. To so hold would be to ignore the fact that it was error to incorporate community property principles into this criminal proceeding in the first place.

[8]*See e.g. In re Marriage of Olivares*, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993) (In a dissolution proceeding, the trial court has a duty to characterize the property before it for dissolution as either community or separate. The status of the property is not, however, controlling in regard to its disposition.).

[9]*See e.g., Sunkidd Venture, Inc. v. Snyder-Entel*, 87 Wn. App. 211, 215-17, 941 P.2d 16 (1997), *review denied*, 134 Wn.2d 1007 (1998).

[10]*See e.g., In re Estate of Mell*, 105 Wn.2d 518, 716 P.2d 836 (1986).

[11]The Residential Landlord-Tenant Act of 1973, RCW 59.18.150, allows landlords a right of reasonable entry to inspect, make repairs, supply services, show the premises to certain persons, and to enter in cases of emergency.

session of the leased premises and the right to exclude others therefrom are not, and should not be, affected by the fact that the premises may later be determined to have some community property character.

Courts in Washington and elsewhere have recognized that one spouse's right to possession of real or personal property may be superior to that of the other spouse. For example, in *State v. Webb*,[12] the husband moved out of the marital residence and gave his key to his wife, leaving her in sole possession of the apartment. After the wife commenced a dissolution action, the husband entered the apartment and vandalized it. The husband was convicted of second degree burglary and second degree malicious mischief. He argued that he was not guilty as a matter of law for any damage to community property because the malicious mischief statute required that the property damaged be "property of another." The court rejected that argument and held that the term "property of another" as used in the malicious mischief statute includes property co-owned by the defendant. The court concluded that because the husband had moved out of the apartment and relinquished his key to his wife, and because the wife had removed the husband's possessions from the apartment, it was "apparent that [the wife] had the superior, if not sole, interest in the personal property in her possession."[13] Notably, some of the personal property was community property. Nevertheless, the court determined that the wife had a superior interest in it under the particular facts of the case.

Courts from other states have also recognized that one spouse may have a greater right to possession of real or personal property vis a vis the other spouse. For example, in *Stanley v. State*,[14] the parties were separated but not divorced. The wife left the marital home and moved to an

---

[12] 64 Wn. App. 480, 824 P.2d 1257 (1992).

[13] *Webb*, 64 Wn. App. at 490.

[14] 631 S.W.2d 751 (Tex. Crim. App. 1982).

apartment. The husband entered the apartment uninvited and armed with a revolver. The husband was charged with burglary of a habitation with intent to commit murder. One of the elements of the crime is that entry be made without consent of the owner. The husband argued that because he was married to the person who occupied the apartment he entered, he had the right to enter into "the same habitation as his spouse and to enjoy his conjugal rights."[15] The court rejected the husband's argument and stated:

> [W]e reject under the circumstances, appellant's claim that the marital relationship authorized him to break and enter the premises occupied by his estranged wife. His wife clearly had the greater right of possession and was an "owner." The couple had separated and she had filed for divorce, had moved from the home where she resided with the appellant, and had established another home for herself and her son. *She had the right to refuse consent*. There was no implied consent to break and enter merely because of the marital status.[16]

The court in *Davis v. State*[17] relied on *Stanley* to reject a husband's argument that he was entitled to a directed verdict in his trial on a criminal trespass charge for entering his estranged wife's apartment in her absence, uninvited and without permission. The wife had used community funds to pay for the security deposit and the first month's rent, but then opened a separate account and thereafter paid the rent using funds from that account. Following *Stanley*, the court determined that the wife had a greater right to possession of the premises and thus had the right to refuse entry to her husband.[18] For the same reason, the court rejected the husband's argument that

---

[15]*Stanley*, 631 S.W.2d at 753.

[16](Emphasis added.) *Stanley*, 631 S.W.2d at 753. In a later case, a Texas court interpreted *Stanley* as standing for the proposition that "[a] marital relationship does not authorize a spouse to enter an estranged spouse's residence." *Gomez v. State*, 905 S.W.2d 735, 741 (Tex. Ct. App. 1995).

[17]799 S.W.2d 398 (Tex. Ct. App. 1990).

[18]*Davis*, 799 S.W.2d at 400.

because the property in the apartment was the mixed separate property of both spouses and community property, he had joint management and control over the leasehold and thus could not be convicted of criminal trespass.[19]

The husband in *People v. Sears*[20] moved out of the family residence, returned three weeks later, and entered the home uninvited and armed with a pipe. No divorce proceeding had been instituted at the time of the crime. As a secondary reason for rejecting the husband's argument that he could not be convicted of burglary because he had a right to enter the family home,[21] the court stated, "since defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission."[22] Thus, the fact that the marital home might have been community property did not prevent the court from finding that the wife had the superior right to possession of the home and the right to exclude the husband therefrom.

While the facts of these cases vary, the principles recognized are consistent and fundamental. The criminal law does not ordinarily inquire whether a marriage is "defunct" or whether a legally cognizable "community" exists.[23] The public policy underlying the Domestic Violence-Official Response Act provides all the theoretical framework necessary here:

[P]revious societal attitudes have been reflected in policies and practices of law enforcement agencies and prosecutors which

---

[19]*Davis*, 799 S.W.2d at 400.

[20]62 Cal. 2d 737, 401 P.2d 938, 44 Cal. Rptr. 330 (1965).

[21]The primary reason for the court's holding was: "One who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public." *Sears*, 62 Cal.2d at 746.

[22]*Id.*

[23]We recognize that under certain circumstances, e.g., whether items of personal property constitute "property of another" under theft statutes, some exploration of principles of ownership may be required. Such questions are not involved here.

have resulted in differing treatment of crimes occurring between cohabitants and of the same crimes occurring between strangers. Only recently has public perception of the serious consequences of domestic violence to society and to the victims led to the recognition of the necessity for early intervention by law enforcement agencies. It is the intent of the legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated. *Furthermore, it is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship.*[24]

The lower courts' reasoning would in effect impose the impossible requirement that where the parties are married but living separately, the enforcement mandated by the legislature would be detoured for an inquiry about the potential community property interests of each spouse in the other's residence. Indeed, that is exactly what transpired below. The court inquired of the defendant as follows:

Ms. Chattin, the issue in this case is whether the marriage was defunct under Washington State Law. That definition requires and the proof is on Mr. Chattin that both sides believed, intended and the conduct demonstrated that there was no hope for the marriage to survive; there was no conduct which indicated that either side wanted it to survive; both sides believed, agreed and intended that the marriage was irrevocably over. Did you believe that, intend that and was that your wishes in and up to January 28th?

Under the lower courts' reasoning, a defendant could avoid prosecution merely by testifying to a subjective belief that a marriage is not "defunct." Spouses fleeing a violent relationship could never be secure in the belief that a new, separate residence could be a safe haven because until the marriage is finally legally dissolved, the risk of intrusion by

[24]RCW 10.99.010 (emphasis added).

the other spouse would remain and would likely be subject to no criminal sanction. The abusive spouse could enter the other spouse's dwelling without consent or invitation, and remain there on the basis of the abusive spouse's simple assertion that the marriage is not defunct and that the other spouse is using community funds (i.e., current income) to pay the rent or mortgage. This scenario is hardly consistent with the legislature's clear public policy of preventing domestic violence.[25]

In sum, the lower courts erred in applying community property principles to the determination of Ms. Chattin's guilt. Such principles have no place in the context of a prosecution for domestic violence assault. We reverse the superior court's decision affirming the district court, and remand to the district court for further proceedings consistent with this opinion.

AGID, A.C.J., and APPELWICK, J., concur.

---

[25]We reject as without merit Ms. Chattin's argument that a prosecution for the misdemeanor offense of failure to disperse under Bellevue City Code is an effective substitute for a prosecution for the crime of domestic violence.