STATE of Iowa, Appellee,

v.

**Donald Keith HAGEDORN, Jr., Appellant.**

No. 03–0232.

Supreme Court of Iowa.

May 12, 2004.

Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, William E. Davis, County Attorney, and Robert L. Cusack, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Donald Hagedorn, Jr., was convicted of burglarizing his estranged wife's home. He claims on appeal that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he had "no right, license or privilege" to enter the premises. We conclude the mere fact the defendant had previously resided at the residence in question with his family did not give the defendant an irrevocable "right, license, or privilege" to enter the premises until restrained from doing so by court order. Nor did the defendant have an absolute right to enter simply because his wife and children continued to reside there.

We think evidence that the defendant no longer lived in the marital home supports the jury's finding that he had "no right, license or privilege" to enter the residence. Therefore, the trial court did not err in refusing to enter a judgment of acquittal. Accordingly, we affirm.

I. *Background Facts and Proceedings.*

At all times pertinent to this case, Donald and Sue Hagedorn were husband and wife. Prior to July 2002, they lived with their two children in a duplex leased by Sue.

In mid-July 2002 the couple separated and both moved out of the duplex. Although Sue moved most of her belongings out, Donald left his possessions in the

home. Toward the end of July, Sue moved back into the duplex. At that time, she packed the defendant's belongings and placed them on the porch for his family to retrieve.

Prior to the couple's separation, Sue had begun a relationship with Donald's friend, Marvin Mooney. The defendant was upset about this relationship and after he and Sue separated, he began calling her at work and at home, sometimes up to thirty times a day. He also called Marvin and Marvin's parents, repeatedly telling them that Marvin should stay away from Sue. Sue contacted the police about the incessant calls she had been receiving from Donald, but instituted no legal proceedings against him.

After Sue moved back into the duplex, Marvin began staying with her there. A few days before the incident involved in this case, Donald walked into the bathroom while Marvin was taking a bath. Sue told the defendant to get out of the house and that she did not want him there. After this episode, Sue had the locks on the house changed so Donald could not get in. Sue told the defendant on at least four or five other occasions that he was to stay away from the duplex.

Donald ignored these repeated admonitions. In the early morning hours of August 2, 2002, the defendant, after parking his vehicle a block and a half away, removed a window screen and entered the duplex through a side window. Sue, who was sleeping with Marvin in a bedroom, was awakened by the sound of a baseball bat, swung by the defendant, striking Marvin in the head. After hitting Marvin, Donald left the way he had entered. Marvin sustained severe head injuries in the attack.

The defendant was charged with (1) attempted murder, (2) first-degree burglary, (3) willful injury, (4) going armed with intent, and (5) stalking. He pled not guilty and the case proceeded to trial. At the close of the State's case, the defendant moved for a judgment of acquittal as to all charges. With respect to the burglary charge, the defendant claimed the duplex was the marital home and Sue's desire that he not be there did not abrogate his right, license, and privilege to enter the premises. *See State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995) (stating there is no burglary if the person entering the building " 'has a right so to do, although he may intend to commit, and may actually commit, a felony, and although he may enter in such a way that there would be a breaking if he had no right to enter' " (citation omitted)). The court denied the defendant's motion and the defense rested without putting on any evidence.

The jury returned a verdict finding the defendant guilty of the lesser offense of assault with intent to inflict serious injury (rather than attempted murder), burglary in the first degree, willful injury, and going armed with intent. The defendant was found not guilty of stalking.

After sentencing, the defendant appealed. He raises only one issue: whether the court erred in failing to enter judgment of acquittal on the burglary charge.

II. *Scope of and Standards for Review.*

■ "A motion for judgment of acquittal is a means for challenging the sufficiency of the evidence to sustain a conviction...." *State v. Allen*, 304 N.W.2d 203, 206 (Iowa 1981). We review a sufficiency-of-the-evidence ruling for correction of errors of law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). If the verdict is supported by substantial evidence, we will uphold a finding of guilt. *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999). " 'Substantial evidence' is that upon which a rational

trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.* In conducting our review, we consider all the evidence, that which detracts from the verdict, as well as that supporting the verdict. *Id.* We view the evidence in the light most favorable to the State. *Id.*

III. *Discussion.*

■ The defendant's argument on appeal is simple: he claims he cannot be convicted of burglary for entering his own house. He asserts that even though he was "temporarily" absent from the residence, it remained the marital home and he had a right to be there. He principally relies on this court's decision in *Peck,* where we affirmed a defendant's burglary conviction on the basis he had no right to enter the marital home after his wife had obtained a restraining order that prohibited the defendant "from coming upon any premises occupied by the petitioner and minor children...." *Peck,* 539 N.W.2d at 172. Contrary to the defendant's interpretation of our decision, we did not suggest in *Peck* that the defendant had an absolute right to enter the marital home unless restrained from doing so by a court of law. Because we held the defendant's entry was expressly proscribed by the court order, it was not necessary to decide what rights the defendant would have had in the absence of the restraining order. *Id.* at 173. Thus, although our general discussion of the burglary offense in that case is helpful in resolving the present case, our decision in *Peck* is not dispositive.

■ We begin our analysis of the issue presented in the case before us with the burglary statute, Iowa Code section 713.1 (2001). That statute states, in relevant part, that burglary is committed when

[a]ny person, having the intent to commit a felony, assault or theft therein, who, *having no right, license or privi-*

*lege to do so,* enters an occupied structure, such occupied structure not being open to the public ....

Iowa Code § 713.1 (emphasis added). As we consider whether the defendant's conduct falls within the scope of this statute, we are guided by two, sometimes competing, principles: although criminal statutes are to be strictly construed in favor of the accused, "they must be construed reasonably and in such a way as to not defeat their plain purpose." *Peck,* 539 N.W.2d at 173. Accordingly, we now examine the purpose of our burglary statute.

At common law, "[t]he crime [of burglary] was considered to be an offense against the security of habitation or occupancy.... It was not designed to protect property or ownership, rather the notion that people should be able to feel secure in their homes." *Pace,* 602 N.W.2d at 768. As we explained in *Pace,*

" 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime [or] to escape.... The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' "

*Id.* (citations omitted).

The promotion of personal safety was a factor in our rejection of the defendant's challenge to his burglary conviction in *Peck,* where we stated that "[a]pplication of our burglary law in these circumstances will tend to discourage domestic violence and promote security in the home." 539 N.W.2d at 173. In making this statement, we relied on our decision in *State v. Zeien,*

505 N.W.2d 498 (Iowa 1993), a case that is also instructive here.

In *Zeien,* the defendant was convicted of criminal mischief for damaging marital property located in the home of his estranged wife. 505 N.W.2d at 498. The offense of criminal mischief was defined as " '[a]ny damage . . . of tangible property . . . when done intentionally by one who has *no right to so act.* '" *Id.* (emphasis added) (quoting Iowa Code section 716.1 (1991)). The defendant argued that "because he had an ownership interest in the property [damaged], he had the 'right to so act' under section 716.1." *Id.* He claimed that "if destruction of marital property is prohibited by section 716.1, a spouse cleaning out a closet and destroying some of its contents might be subject to criminal liability." *Id.* We rejected these arguments, stating:

> The wording of the statute, as well as public policies of preventing domestic violence and damage to property generally, suggests that the statute should apply to marital property as well as any other.
>
> . . . .
>
> The specter of prosecution for the destruction of marital property through unintentional acts such as house cleaning, we believe, does not provide a sufficient justification for excusing intentional destruction of property. Prosecution for an accidental act of property destruction should be no more likely than an assault prosecution arising out of an accidental physical injury to one's spouse. Both types of criminal act require intent, and we rely on the good judgment of prosecutors and fact finders at trial to sort out the intentional cases from the unintentional ones.
>
> . . . .
>
> We do not attribute an intent to the legislature to exempt from section 716.1

the intentional acts of a defendant toward property owned by a spouse.

*Id.*

■ The *Peck* and *Zeien* cases stand for the proposition that the existence of a domestic relationship between the accused and the victim of a crime does not lessen the applicability of or protection afforded by our criminal statutes. Moreover, our decision in *Peck* is consistent with the legislative purpose underlying section 713.1 to protect the security of *occupancy,* rather than ownership rights, and to promote personal safety. *See Peck,* 539 N.W.2d at 173 (rejecting defendant's claim that he had a greater right to possession of the premises because he had paid the rent on the house). We conclude, then, based on legislative intent and our case law, that whether one has a right or privilege to enter property is not determined solely by his or her ownership interest in the property, or by whether the structure can be characterized as the "marital home." Rather the focus under our burglary statute is on whether the defendant had any possessory or occupancy interest in the premises at the time of entry. *See State v. Lilly,* 87 Ohio St.3d 97, 717 N.E.2d 322, 327 (1999) ("Because the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive.").

■ Our interpretation of section 713.1 necessarily requires rejection of the defendant's argument that because "the residence was the marital home of the defendant and his wife," he had an absolute right to enter the home unless prohibited from doing so by court order. Neither the fact the defendant had *previously* resided in the duplex with his family nor the fact his children were still in the home gave him an irrevocable license to enter against the wishes of his wife, the current occu-

pant. *Cf. Pace,* 602 N.W.2d at 773 (holding surrounding circumstances supported finding defendant had no right, license, or privilege to enter home of former wife's boyfriend, even though his children were in the house and he was entitled to exercise visitation with his children at the time he went to the residence). To allow the existence of a marital relationship to immunize a defendant from the consequences of a burglary hearkens back to the day when the law provided no protection to the victims of domestic assault under the misguided view that it was a private matter between husband and wife. Surely a spouse who stays in the marital residence after the other spouse has moved out should be able to enjoy the security and sanctity of his or her home without the necessity of obtaining a restraining order. In summary, we hold the possessory interest of the person residing in the burglarized residence is no less entitled to protection simply because a marital relationship exists between the perpetrator and the victim of the crime. *See White v. State,* 587 So.2d 1218, 1224–27 (Ala.Crim.App. 1990) (adopting view of other courts that have rejected " 'position that there is any absolute right on the part of one spouse to be with the other against the other's wishes, giving a right to break into the home of the other with the intent to commit a crime' " (citation omitted)); *Cladd v. State,* 398 So.2d 442, 444 (Fla.1981) ("Since burglary is an invasion of the possessory property rights of another, where premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with intent to commit an offense...."); *Matthews v. Commonwealth,* 709 S.W.2d 414, 420 (Ky.1985) (stating "burglary is an invasion of the possessory property right of another and extends to the spouse"); *cf. City of Bellevue v. Jacke,* 96 Wash.App. 209, 978 P.2d 1116,

1119 (1999) (stating in affirming defendant's conviction of domestic violence assault of her estranged husband at his apartment, "[t]here was no implied consent to break and enter merely because of the marital status").

Having determined the proper focus in cases such as this, we readily conclude there is substantial evidence in the record from which a jury could find the defendant had no possessory or occupancy interest in the duplex at the time of the offense. There was evidence the defendant by his own volition no longer resided at the duplex where his wife lived. His personal belongings had been boxed and were on the porch for him to pick up. The defendant had been told emphatically on multiple occasions that he was no longer welcome and should stay away. He knew his wife had changed the locks after an earlier incident when he had appeared uninvited in the house. This evidence supports a finding the defendant was not an occupant of the duplex on August 2, 2002, and had no possessory interest in the premises. This finding, in turn, supports the jury's conclusion the defendant had no right, license, or privilege to enter his estranged wife's home on the night of the offense.

Looking beyond this case, we can certainly envision circumstances where the occupancy rights of the estranged couple with respect to the marital home would be murkier than they are here. But the specter of difficult factual determinations should not deter us from applying the burglary statute where the requisite proof is present. As we observed in *Zeien,* "we rely on the good judgment of prosecutors and fact finders at trial to sort out" the genuine case of burglary from the one lacking the necessary factual support. *Zeien,* 505 N.W.2d at 499. Certainly, here, where there is evidence the parties had established separate residences, how-

ever reluctant the defendant was to do so, there is a submissible jury question on whether the defendant had a right, license, or privilege to enter his estranged wife's home. Application of the burglary statute under these circumstances furthers the legislative intent to " 'forestall the germination of a situation dangerous to personal safety.' " *Pace,* 602 N.W.2d at 768 (citation omitted). More specifically, protecting the possessory interests of a person occupying the marital home after his or her spouse has moved out promotes the public policy underlying our decisions in *Zeien* and *Peck*—the prevention of domestic violence.

As a final matter, we note the weight of authority clearly supports the application of burglary statutes to domestic situations. *See People v. Johnson,* 906 P.2d 122, 125 (Colo.1995) (noting the majority of jurisdictions that have addressed this issue "have found that the uninvited entry of an estranged spouse into the residence of the other spouse constitutes an 'unlawful entry' "); *Lilly,* 717 N.E.2d at 327 (same). Moreover, other courts have affirmed burglary or trespass convictions under circumstances very similar to those before us. *See, e.g., People v. Sears,* 62 Cal.2d 737, 44 Cal.Rptr. 330, 401 P.2d 938, 944 (1965) (giving as a secondary reason for affirmance of burglary conviction that "since defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission"), *overruled on other grounds by People v. Cahill,* 5 Cal.4th 478, 20 Cal.Rptr.2d 582, 853 P.2d 1037 (1993); *People v. Davenport,* 219 Cal. App.3d 885, 268 Cal.Rptr. 501, 505 (1990) (affirming defendant's burglary conviction based on his unauthorized entry into marital home from which he had moved, even though he still had personal property in the home and no restraining order had been issued); *Parham v. State,* 79 Md.

App. 152, 556 A.2d 280, 285 (1989) (affirming burglary conviction where defendant's wife had thrown him out of marital home two months prior to crime, defendant was living with his sister, and wife was in process of purchasing property in her own name, even though defendant still had some personal belongings in house); *State v. Cox,* 73 N.C.App. 432, 326 S.E.2d 100, 102–03 (1985) (affirming defendant's conviction for burglarizing family home from which defendant had moved a year earlier); *State v. O'Neal,* 87 Ohio St.3d 402, 721 N.E.2d 73, 82 (2000) (finding sufficient evidence of trespass where wife was the sole lessee under lease agreement for parties' home and defendant had moved out of the house four days prior to the alleged crime and had begun living elsewhere).

### IV. *Conclusion.*

In summary, we hold the evidence was sufficient to support a finding that the defendant no longer resided in the marital home at the time of the offense and therefore had no possessory or occupancy interest in the premises. This conclusion, coupled with his wife's clear denial of permission for him to come into her house, was sufficient to establish that the defendant had no right, license, or privilege to enter the duplex. Therefore, the trial court did not err in overruling the defendant's motion for judgment of acquittal and submitting the burglary count to the jury.

**AFFIRMED.**

All justices concur except CARTER, J., and LAVORATO, C.J., who concur specially.

CARTER, Justice (concurring specially).

I concur only in result because the facts reveal that the duplex was leased by Sue. Consequently, she could control the occu-

pancy thereof by excluding Donald's right of entry, notwithstanding the fact that it had at one time been his marital domicile. As a result, the jury could have found his entry was without right, license, or privilege, as must be the case for a burglary offense. But, it certainly would be otherwise if he was an owner or lessee of the property.

As stated in 73 C.J.S. *Property* section 27, at 209–10 (1983),

> [t]he chief incidents of the ownership of property are the right to its possession, the right to its use, and the right to its enjoyment, according to the owner's taste and wishes . . . .

(Footnotes omitted.) We recognized this attribute of property ownership in *Iowa State Highway Commission v. Smith,* 248 Iowa 869, 871, 82 N.W.2d 755, 758 (1957). The right of possession of jointly owned property is in common, and each has a right to the enjoyment of the whole thereof. *In re Estate of Winkler,* 232 Iowa 930, 933, 5 N.W.2d 153, 155 (1942). The same would be true as to a cotenant's right of occupancy of leased premises.

As written, the majority opinion is much too broad and implies a right to throw an estranged spouse out of the family home or to preclude him from reentering based on some claim of right that is superior to his property interest. That right does not exist in the absence of a court order.

LAVORATO, C.J., joins this special concurrence.