United States Court of Appeals

For the Eighth Circuit

_____

No. 16-1558
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy Lawan Postley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 23, 2016
Filed: October 11, 2016
[Unpublished]
_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.
_____

PER CURIAM.

Timothy Lawan Postley appeals from the district court's[1] decision revoking his supervised release and imposing a sentence of 30 months' imprisonment for a Grade

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

A violation of burglary in the second degree and other Grade C violations. He argues that the district court clearly erred in finding he committed second-degree burglary. As a result of this clear error, it allegedly abused its discretion by imposing a 30-month sentence. For the reasons discussed below, we affirm.

On December 4, 2015, police officers responded to a report of a disturbance at Kima Mali's apartment in Cedar Rapids, Iowa and arrested Postley for second-degree burglary.[2] Mali, Postley's ex-girlfriend, told officers that Postley came to her apartment, knocked on her door, and rang her doorbell for about an hour before breaking the deadbolt and forcing his way into her apartment. Once inside, he found Mali in her bedroom, slapped her, and began to choke her. After Mali threatened to call the police, Postley fled. Mali also disclosed that she and Postley had broken up and that he did not reside with her.

During the police interview with Mali, Postley returned to the apartment, and officers arrested him, placed him in the back of the squad car, and read him his *Miranda* rights. He admitted that he and Mali had dated but had broken up about nine months earlier. He told officers that he previously lived with Mali while they were together but had given back the apartment key when he moved out. Postley claimed that he was at the apartment that night because Mali called and asked him to come. After changing his story about his whereabouts that evening, Postley refused to answer any further questions. At the time, Postley was on supervised release.

At his revocation hearing, Postley admitted to Grade C violations. He conceded that he failed to participate in substance abuse testing, did not comply with the instructions of his probation officer, and refused to pay the costs of his remote alcohol-testing program. He also admitted that he assaulted and choked Mali, but he

---

[2]On January 25, 2016, the Linn County District Attorney dismissed the second-degree burglary charge against Postley after Mali told the prosecutor that she would not honor a subpoena or cooperate with authorities.

denied committing burglary in the second degree, a Grade A violation. Postley argued that because he was living with Mali at the time of the incident, he did not commit second-degree burglary.

To buttress these claims, Postley called his mother and his sister to testify at the revocation hearing. They both testified that Mali was Postley's girlfriend and that Postley often would stay at Mali's apartment and even had a key. However, when Postley's mother went to retrieve his belongings after his arrest, she admitted that the key to Mali's apartment was not on Postley's key ring.

The Government called Postley's probation officer, who testified that Postley reported residing with his mother and never reported residing with Mali. Furthermore, the probation officer testified that Postley admitted that Mali was an ex-girlfriend and that he was dating a different woman. Finally, the probation officer testified that he reviewed the recorded phone calls Postley made from jail to Mali. During those calls, Mali said she was being evicted and that "[Postley] should have just gone home." Postley also repeatedly asked Mali to drop the burglary charges against him during these calls.

After reviewing the evidence, the district court concluded by a preponderance of the evidence that Postley committed burglary in the second degree and revoked his supervised release. It did not find the testimony of Postley's mother and sister credible, noted Postley's own admissions to law enforcement officers, and reasoned that if Postley really had permission and a key, he would not have needed to kick down Mali's apartment door. With the burglary finding and the admitted Grade C violations, Postley's sentencing guideline range was 27 to 33 months, and the district court sentenced him to 30 months' imprisonment. On appeal, Postley argues that the district court clearly erred in finding he committed second-degree robbery and, as a result, abused its discretion in sentencing him to 30 months' imprisonment.

We review a district court's "underlying factual findings as to whether a violation occurred for clear error" and its revocation decision for an abuse of discretion. *United States v. Rhone*, 647 F.3d 777, 779 (8th Cir. 2011) (quotations omitted). However, if the district court's finding of fact is based on a credibility determination, we note that the standard is even higher, as "[w]itness credibility is quintessentially a judgment call and virtually unassailable on appeal." *United States v. Cates*, 613 F.3d 856, 858 (8th Cir. 2010) (quoting *United States v. Bolden*, 596 F.3d 976, 982 (8th Cir. 2010)). And as is the case with initial sentencing proceedings, we review a district court's sentence on revocation of supervised release for substantive reasonableness, *United States v. Growden*, 663 F.3d 982, 984 (8th Cir. 2011), and accord a sentence "within the advisory guideline range . . . a presumption of reasonableness," *United States v. Scales*, 735 F.3d 1048, 1052 (8th Cir. 2013) (quotations omitted). In this case, "[i]t is the defendant's burden to rebut the presumption and to show that the sentence should have been lower." *United States v. Goodale,* 738 F.3d 917, 926 (8th Cir. 2013) (quotations omitted).

Postley's principal argument is that the district court clearly erred in finding that he committed second-degree burglary under Iowa law. Iowa Code section 713.5 defines burglary in the second degree as "perpetrating a burglary . . . in which . . . a bodily injury results to any person," and Iowa Code section 713.1 defines burglary:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Postley claims that because he had a "right, license or privilege" to enter into Mali's apartment, he did not commit burglary in the second degree. Postley relies on *State v. Hagedorn*, 679 N.W.2d 666 (Iowa 2004), for this argument. There, the Iowa

-4-

Supreme Court found that the defendant had no possessory or occupancy interest in the residence of his estranged wife because he no longer resided at the residence, his personal belongings had been set outside, he had been told multiple times that he was not welcome, and he knew the locks had been changed. *Id.* at 671. Postley claims that the application of *Hagedorn* requires reversing the district court's finding of fact. However, we see no clear error in the district court's finding that Postley committed burglary in the second degree.

As in *Hagedorn*, the evidence in this case demonstrates that Postley did not have a "right, license or privilege" to enter Mali's apartment the night of the assault. Postley's probation officer had no record that he ever lived with Mali. Postley himself admitted to officers that he did not live at Mali's apartment, that they had broken up approximately nine months before the assault, and that he had moved out of the apartment. Mali confirmed these facts, telling the officers that Postley did not live with her and that she refused to let him into her apartment the night of the assault. During recorded jail calls, Mali told Postley that "she" was being evicted, not that "they" were being evicted. She told him that he should have gone home—that is, not to her apartment. In sum, Postley may have once had a right, license, or privilege to enter Mali's apartment, but it had expired long before he kicked in her door and assaulted her.

That the district court chose to credit this evidence over the testimony of Postley's mother and sister was not clearly erroneous. Postley's statements to police were corroborated time and time again. The district court noted, "If he really had permission to be there and really had a key, it would not be necessary for him to kick the door down." These credibility determinations and factual findings are not clearly erroneous, as they "are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence in the case." *See United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001). The district court correctly

found that Postley committed second-degree burglary by entering Mali's apartment without "right, license or privilege" and assaulting her.

Finally, Postley's sole sentencing argument is that the district court abused its discretion by considering the second-degree burglary finding. Because the district court correctly found Postley committed second-degree burglary, and therefore a Grade A violation, it did not abuse its discretion by sentencing him, within the advisory guidelines range, to 30 months' imprisonment.

The judgment of the district court is affirmed.

_____