#27696-a-JMK

**2016 S.D. 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA, 　　　　　　　　Plaintiff and Appellee,

　　v.

JOHN T. PENTECOST, 　　　　　　　　　　Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota 　　　　　　　　　　Attorneys for plaintiff
　　　　　　　　　　　　　　　　　　　　and appellee.


JAMY PATTERSON
Rapid City, South Dakota 　　　　　　　　Attorney for defendant
　　　　　　　　　　　　　　　　　　　　and appellant.


* * * *

ARGUED ON
OCTOBER 3, 2016

OPINION FILED **11/30/16**

#27696

KERN, Justice

[¶1.]       In April 2012, John Pentecost entered the home he previously shared with his ex-wife. He had not lived in the home for more than a year and brought with him items that could be used for restraint, a suicide note, and his Last Will and Testament. The police arrested Pentecost inside the home even though he contended that he had a legal right to be present. The State charged him with several offenses, including second-degree burglary. He filed a pretrial motion to dismiss the burglary charge, which was denied. Ultimately, Pentecost pleaded guilty to second-degree burglary and was sentenced to prison. He later moved to withdraw his plea, but the court denied his motion. Pentecost appeals. We affirm.

## BACKGROUND

[¶2.]       On April 19, 2012, Pentecost hired a locksmith to rekey the home that he previously shared with his ex-wife, L.S., during their marriage. After gaining entrance to the house, he sent L.S. a text message informing her that he had changed the locks and moved some of his property inside because he wanted "to get a piece of his life back." L.S., who was at work, called the police and reported what Pentecost had done. Upon their arrival, officers arrested Pentecost inside the home and discovered a shotgun and ammunition in his car. The investigation revealed that he brought the following items into the home: several bags, suitcases, clothing, zip ties, duct tape, cable wraps, a sales slip for the recent purchase of a handgun, a suicide note, and his Last Will and Testament.

[¶3.]       The State indicted Pentecost for second-degree burglary, a Class 3 felony, and two alternative counts of stalking, both Class 1 misdemeanors. The

-1-

State also filed a part II information alleging he had a prior conviction for stalking, which, if proven, would enhance the penalty to a Class 6 felony. He entered not guilty pleas to all counts.

[¶4.]    At the time of his arrest, Pentecost was staying in Rapid City, South Dakota, but living primarily with relatives in Florida. Although Pentecost and L.S. divorced on April 8, 2011, he continued to send her hundreds of text messages and hours of voicemails, hoping to win back her affections. L.S. had informed him that she did not want further contact with him. Although he had visited the home, Pentecost had not stayed overnight since March 2011. He retained several items of personal property in the home, including a living room set and TV because he was unable to move them. Sometime prior to the incident, L.S. moved the items into a storage room and changed the locks on the home.

[¶5.]    During their divorce proceedings, Pentecost and L.S. entered into a stipulation and property settlement agreement, providing that the home would be immediately placed on the market for sale. The proceeds from the sale would be used to satisfy certain debts with any remaining sums divided equally between the parties. The agreement also provided that the divorce decree "shall operate as affective [sic] transfer" of Pentecost's interest in the property. The decree, which incorporated the stipulation, required Pentecost to execute any and all documents necessary for listing and selling the property, including a deed to divest himself of his interest. If he failed to provide the documents, the decree provided authority for L.S. to "actualize said sale and transfer the parties' interest[.]" When Pentecost

entered the home in April 2012, the house had not yet sold, and his name still appeared on the deed and on the home insurance contract.

[¶6.] Pentecost filed a motion to dismiss the second-degree burglary charge on August 23, 2012, arguing it was legally impossible for him to burglarize the home as he retained an ownership interest in it. On August 29, 2012, the circuit court held a hearing and denied the motion to dismiss. The court found that the question whether Pentecost was licensed or privileged to enter the home was for the jury to resolve.

[¶7.] On November 5, 2012, the circuit court held a change of plea hearing. Pursuant to the terms of a plea agreement, Pentecost pleaded guilty to second-degree burglary.[1] In exchange for his plea, the State dismissed the stalking charge and part II information and capped its sentencing recommendation at six years. Prior to the entry of the plea, counsel advised the court that Pentecost "was not aware that he was breaking the law by entering into what he understood to be his own home. Nevertheless, we believe the [S]tate would have met the elements at trial." With Pentecost's consent, the court took judicial notice of the grand jury transcripts, the police reports, and the pleadings from the divorce. There was some discussion at the plea hearing as to whether his plea was one of guilt or intended as

---

1. Second-degree burglary is defined in SDCL 22-32-3, which provides:

> Any person who enters or remains in an occupied structure with intent to commit any crime, unless the premises are, at the time, open to the public or the person is licensed or privileged to enter or remain, under circumstances not amounting to first[-]degree burglary, is guilty of second-degree burglary. Second-degree burglary is a Class 3 felony.

an *Alford* plea.[2] On December 3, 2012, the circuit court sentenced Pentecost to six years in prison.

[¶8.] Pentecost's attorney filed an appeal, but it was untimely and dismissed by this Court. On January 24, 2014, Pentecost filed a petition seeking a writ of habeas corpus in the Seventh Judicial Circuit, alleging ineffective assistance of counsel and a denial of due process. Upon receipt of the habeas petition, the presiding judge, rather than proceed on the habeas action, ordered the judge originally assigned to the case to resentence Pentecost. On July 30, 2014, the day before his resentencing hearing, Pentecost filed a motion to set aside his judgment of conviction and to allow withdrawal of his plea. The circuit court held a resentencing hearing on July 31, 2014, denied Pentecost's motion,[3] and resentenced him to the same sentence imposed in 2012. An amended judgment was issued on August 15, 2014.

[¶9.] Pentecost appealed the court's amended judgment of sentence and challenged his original conviction, raising several issues regarding his plea. We concluded that this Court lacked jurisdiction to consider Pentecost's issues related to his original conviction because Pentecost failed to timely appeal his original judgment of conviction. However, we remanded the case to the circuit court for the

---

2. The circuit court stated at the November, 5, 2012 change of plea hearing that the "plea from the [c]ourt's perspective is in the nature of an *Alford* plea."

3. "The court acknowledged that there was "significant discussion," during the change of plea hearing about "Mr. Pentecost's plea being an Alford or something else." But the court denied the motion to withdraw, finding that whether the plea was a "straight guilty plea or an Alford plea" it was made after an extensive advisement of rights and was well supported by the record.

court to apply SDCL 23A-27-51 and to make factual findings regarding whether Pentecost "was denied the right to appeal from an original conviction in violation of the Constitution of the United States or the Constitution of South Dakota." *State v. Pentecost* (*Pentecost I*), 2015 S.D. 71, ¶ 10, 868 N.W.2d 590, 593 (quoting SDCL 23A-27-51). Upon remand, the circuit court issued findings of fact and conclusions of law identifying that resentencing would occur pursuant to SDCL 23A-27-51 for the purpose of reinstating Pentecost's right to appeal. On November 24, 2015, the court again sentenced Pentecost to the same terms and conditions of the original sentence imposed on December 3, 2012. Pentecost appeals, and we restate his issues as follows:

1. Whether the circuit court erred by denying Pentecost's motion to dismiss on the grounds that he had a "license or privilege to enter or remain" in the residence under SDCL 22-32-3.

2. Whether the circuit court abused its discretion in denying Pentecost's motion to set aside the judgment of conviction and allow withdrawal of his guilty plea.

3. Whether the circuit court erred by accepting Pentecost's guilty plea without establishing a factual basis for the offense of second-degree burglary.

**DECISION**

[¶10.] 1. Whether the circuit court erred by denying Pentecost's motion to dismiss on the grounds that he had a "license or privilege to enter or remain" in the residence under SDCL 22-32-3.

[¶11.] Pentecost first argues the State lacked subject matter jurisdiction to prosecute him for second-degree burglary because he was licensed or privileged to be in the home as a joint owner. Pentecost cites *State v. Wilson* for the proposition that the court lacked jurisdiction because the charging document was not sufficiently clear on the point of ownership to show "that the property entered is not

the property of the accused." 36 S.D. 416, 155 N.W. 186, 186 (1915). In response, the State submits that the circuit court had jurisdiction and properly denied the motion to dismiss because the question of license or privilege was for the trier of fact.

[¶12.] Whether Pentecost had a legal right to be present in the home does not implicate the court's subject matter jurisdiction. To properly hear a case, a circuit court must have personal jurisdiction over the defendant appearing before them and subject matter jurisdiction over the charges filed by the State. *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 40, 835 N.W.2d 886, 900. Pentecost does not dispute the question of personal jurisdiction.

[¶13.] Subject matter jurisdiction is "a court's competence to hear and determine cases of the general class to which proceedings in question belong" and "the power to deal with the general subject involved in the action." *March v. Thursby*, 2011 S.D. 73, ¶ 15, 806 N.W.2d 239, 243. We have defined the concept of jurisdiction broadly to include "whether there was power to enter upon the inquiry and not whether the determination by the court of a question of law or fact involved is correct." *Medicine Eagle*, 2013 S.D. 60, ¶ 40, 835 N.W.2d at 900. Here, the State's charging documents show that the court had jurisdiction over the subject matter (second-degree burglary). The circuit court, as a court of general jurisdiction, had the power to hear Pentecost's criminal case.[4]

---

4. S.D. Const. art. V, § 1.

[¶14.]    Pentecost's argument that he was licensed or privileged to enter is a substantive question relating to the elements of the offense. SDCL 22-32-3 defines second-degree burglary as entering an occupied structure with the intent to commit any crime "unless the premises are, at the time, open to the public or the person is *licensed or privileged* to enter or remain." (Emphasis added.) Pentecost arguably retained joint legal title to the home,[5] but had not resided there for more than a year. Meanwhile, L.S., who *lived* in the home, did not want him there.

[¶15.]    Although we have not yet addressed this issue, many courts have done so in the context of burglary offenses involving estranged spouses or significant others. The majority of jurisdictions hold that legal ownership, while certainly a factor, is not dispositive of the right to be in a home.[6] Instead, most jurisdictions

---

5.    Pentecost acknowledges that the language of the divorce stipulation provides that the divorce decree shall constitute an "affective [sic] transfer" of his interest in the property. But he argues that this language conflicts with the language of the decree, which grants him joint ownership until the home is sold. It is, however, unnecessary to decide this issue to resolve this case.

6.    *See, e.g.*, People v. Davenport, 268 Cal. Rptr. 501, 505 (Cal. Ct. App.1990) (affirming defendant's burglary conviction based on his unauthorized entry into marital home from which he had moved, even though he still had personal property in the home and no restraining order had been issued); *People v. Johnson*, 906 P.2d 122, 125 (Colo. 1995) (noting that the majority of jurisdictions that have addressed this issue "have found that the uninvited entry of an estranged spouse into the residence of the other spouse constitutes an 'unlawful entry'"); *Parham v. State*, 556 A.2d 280, 285 (Md. 1989) (affirming burglary and assault conviction where defendant entered marital home after wife had thrown him out two months prior to the crime, defendant was living with his sister even though he retained personal belongings in the house, and wife was in the process of purchasing property in her own name); *State v. Singley*, 709 S.E.2d 603 (S.C. 2011) (holding that the "license or privilege" question in a burglary statute is answered by examining the totality of the circumstances); *State v. Schneider*, 673 P.2d 200
                                                                              (continued . . .)

answer the "license or privilege" question by asking whether a defendant had possession of or an occupancy interest in the home. This issue is decided upon consideration of the totality of the circumstances.

[¶16.]     The reasoning of the New Hampshire Supreme Court in *State v. McMillian* is instructive. 973 A.2d 287, 292 (N.H. 2009).[7] In *McMillian*, defendant and victim co-signed a lease for an apartment in March 2007. Sometime before August 2007, victim asked defendant to move out. Defendant removed all his belongings from the apartment and returned his key. Defendant continued to visit on a regular basis and retained a property interest in the apartment. In August 2007, defendant entered the apartment through a bathroom window, left after an argument, and then kicked in the front door and assaulted an occupant. After defendant was charged with burglary, he alleged he had a legal right to enter the home.

_____

(. . . continued)
    (Wash. 1983) (affirming a wife's conviction for burglarizing property, which she jointly owned with her estranged husband).

7.    The New Hampshire burglary statute provides:

    A person is guilty of burglary if he or she enters or remains unlawfully in a building or occupied structure, or separately secured or occupied section thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. It is an affirmative defense to prosecution for burglary that the building or structure was abandoned.

    N.H. Rev. Stat. § 635:1, I.

[¶17.] The court held the question whether defendant was licensed or privileged to enter the apartment was one of fact for the jury. *Id.* "[W]hile the defendant had some proprietary interest in the apartment as a co-lessee, this fact did not automatically give him license to enter under [the New Hampshire burglary statute]." *Id.* The court stated that "the entry here interfered with the security and safety of the occupant, thus implicating the very interests the burglary statute was designed to protect." *Id.* Further, it held that the trial court acted appropriately by instructing the jury on "a list of relevant, although not exclusive, factors, such as defendant's method of entry, his past entries, and the length of [defendant and victim's] separation" to consider when deciding if defendant was licensed or privileged to enter the apartment. *Id.*

[¶18.] The Supreme Court of Iowa applied a similar test in *State v. Hagedorn*, holding there was sufficient evidence to convict a defendant of burglary[8] of his former marital home. 679 N.W.2d 666, 672 (Iowa 2004). Defendant was married to victim, and they lived in a duplex, which was leased by victim. In July 2002, the couple separated and both moved out of the duplex. Defendant left his possessions in the duplex, but victim removed most of her belongings. Toward the end of July,

---

8. Iowa defines burglary as:

> Any person, having intent to commit a felony, assault, or theft, therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

I.C.A. § 713.1.

however, victim moved back into the duplex. She packed up defendant's things and placed them on the porch for his family to retrieve. Victim instructed defendant to stay away from the duplex. In the early morning on August 2, 2002, defendant entered the duplex through a side window and assaulted a person inside. A jury convicted defendant of several crimes, including burglary.

[¶19.]     Defendant in *Hagedorn* argued, as does Pentecost, that "he [could not] be convicted of burglary for entering his own house." *Id.* at 669. The Iowa Supreme Court rejected this argument, noting first that "[a]t common law, '[t]he crime [of burglary] was considered to be an offense against the security of habitation or occupancy . . . . It was not designed to protect property or ownership, rather the notion that people should be able to feel secure in their homes.'" *Id.* In affirming the conviction, the court held that "whether one has a right or privilege to enter property is not determined solely by his or her ownership interest in the property or by whether the structure can be characterized as the 'marital home.' Rather the focus . . . is on whether the defendant had any possessory or occupancy interest in the premises at the time of entry." *Id.* at 670. The court concluded that "neither the fact that the defendant had *previously* resided in the duplex with his family nor the fact his children were still in the home gave him an irrevocable license to enter against the wishes of his wife, the current occupant." *Id.*

[¶20.]     We find the reasoning in *McMillian* and *Hagedorn* persuasive. To determine whether a defendant is "licensed or privileged" to be in a home we examine whether the defendant was in possession of or had an occupancy interest in the home. The primary purpose of our burglary law is to criminalize home

invasions, which may create significant dangers. *See State v. Chipps*, 2016 S.D. 8, ¶ 39, 874 N.W.2d 475, 489 ("'The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate.'") (citation omitted). This paramount right to safety in the home cannot be thwarted by a claimed legal interest when all other factors show that the defendant was not in possession of or an occupant of the home.

[¶21.] Here, Pentecost alleges that he had an ownership interest in the home. But it is undisputed that Pentecost no longer lived there and that the home's occupant, L.S., did not want him in the home. Pentecost hired a locksmith to rekey the home in order to gain access without L.S.'s knowledge or consent. He brought several items into the home, suggesting an intention to harm L.S. The burglary statute exists to protect L.S. in her home, and Pentecost's position would render that protection illusory.

[¶22.] At the end of the hearing on Pentecost's motion to dismiss the second-degree burglary charge, the circuit court stated:

> At this point in time, I cannot dismiss the burglary charge. It certainly appears to me that the issues that arose during the post-divorce suggest, at a minimum, that there is an issue that can be presented to the jury on the question under the statute whether the defendant was licensed or privileged to enter the property, which is the language of the relevant charging statute.

We agree. A claim of legal ownership is not the only dispositive criteria to determine whether an individual has a "license or privilege to enter or remain" under SDCL 22-32-3. Rather, the relevant inquiry under SDCL 22-32-3 is whether

the defendant had a possessory or occupancy interest in the premises. This question is answered upon an examination of the totality of the circumstances, which may include such non-exclusive factors as the defendant's method of entry, history of past entries, the length of the parties' separation, and other relevant information. The court did not err in denying Pentecost's motion to dismiss.

[¶23.]     2.     Whether the circuit court abused its discretion in denying Pentecost's motion to set aside the judgment of conviction and allow withdrawal of his guilty plea.

[¶24.]     Whether to allow withdrawal of a guilty plea is a decision "solely within the discretion of the trial court and is reviewed under an abuse of discretion standard." *State v. Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d 847, 849. An abuse of discretion is a "fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *State v. Lemler*, 2009 S.D. 86, ¶ 40, 774 N.W.2d 272, 286. A defendant may, pursuant to SDCL 23A-27-11 (Rule 32(d)), move to withdraw a guilty plea only *before* a sentence is imposed.

[¶25.]     Pentecost argues that he should have been allowed to withdraw his plea *after* his sentencing because he maintained his innocence, misapprehended the facts, and the case involved a legal issue of first impression. The State, on the other hand, argues that the circuit court carefully considered Pentecost's request in light of all the relevant facts and did not abuse its discretion.

[¶26.]     A court may set aside a judgment of conviction and permit a defendant to withdraw a guilty plea after sentencing only "to correct manifest injustice." SDCL 23A-27-11 (Rule 32(d)). This strict standard is "to prevent a defendant from

testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d at 849 (quoting *State v. Lohnes*, 344 N.W.2d 686, 688 (S.D. 1984)). But "if a defendant enters a plea 'without full knowledge of the consequences and involuntarily' the trial court's discretion should favor withdrawal of the guilty plea." *Id.* (quoting *State v. Wahle*, 521 N.W.2d 134, 137 (S.D. 1994)).

[¶27.] Pentecost's argument is unavailing. Pentecost was originally sentenced on December 3, 2012 and moved to withdraw his plea the day before the first resentencing on July 31, 2014. In denying his motion, the court found Pentecost's request was made at the "11th hour" and untimely. The court noted that "we are on the cusp of two years" following the change of plea and original sentencing and that Pentecost was now "out on parole" at the time of resentencing. Additionally, the court found the delay "has resulted in the potential for significant prejudice to the State." We have recognized that prejudice to the State is a valid reason to deny a defendant's request to withdraw a plea after sentencing. *See State v. Kvasnicka*, 2016 S.D. 2, ¶¶ 17-18, 873 N.W.2d 705, 712-13 (holding that prejudice to state prosecution is a factor weighing against withdrawal of a guilty plea).

[¶28.] Our review of the record reveals that the court carefully advised Pentecost of his statutory and constitutional rights on multiple occasions during the case. Although Pentecost maintained his innocence, he admitted to the underlying facts, which support a burglary conviction. Pentecost lost his motion to strike the second-degree burglary charge and then made a tactical decision to plead guilty. Further, the alleged novelty of the underlying issue does not change our view of the

circuit court's decision. Pentecost's claim lacks the sheen and substance of manifest injustice. The circuit court did not abuse its discretion by denying his motion.

[¶29.] 3. Whether the circuit court erred by accepting Pentecost's guilty plea without establishing a factual basis for the offense of second-degree burglary.

[¶30.] Under SDCL 23A-7-2 (Rule 11(a)) and SDCL 23A-7-14 (Rule 11(f)), a circuit court must not accept a guilty plea, except a plea of nolo contendere, unless it is satisfied there is an adequate factual basis for the plea and offense charged. "The factual basis may come from 'anything that appears on the record.'" *State v. Nachtigall*, 2007 S.D. 109, ¶ 5, 741 N.W.2d 216, 219 (quoting *State v. Schulz*, 409 N.W.2d 655, 658 (S.D. 1987). "In cases where defendants proclaim their innocence while at the same time pleading guilty, the factual basis to support such pleas must be 'strong.'" *Id.* (quoting *Gregory v. State*, 325 N.W.2d 297, 299 (S.D. 1982).

[¶31.] Pentecost asserts that there was an inadequate factual basis because he maintained his innocence, his "admission was equivocal," the charge "was complicated," and "the factual basis was not strong." Additionally, Pentecost submits that the court failed to establish a factual basis that he intended to commit the crime of stalking inside the home. These assertions are not supported by the record.

[¶32.] The evidence collected from the crime scene and sources used to supplement the factual basis were more than sufficient to provide a factual basis for the plea. The police report and grand jury transcripts reveal that officers arrested Pentecost after he entered L.S.'s home. Pentecost had not lived in the home for more than a year, even though he may have retained an ownership interest in the

home. L.S. told Pentecost he was not welcome. Pentecost had a shotgun with ammunition in his car and brought tools of restraint, a suicide note, and his Last Will and Testament into the home. Additionally, Pentecost admitted at the change of plea hearing that, "[w]hen I came home, I was not allowed back in. . . . And I was trying to get back into my house." A review of the plea colloquy shows a factual basis for each of the elements of second-degree burglary. Pentecost was (a) a person; (b) who entered or remained in an occupied structure; (c) with intent to commit any crime; (d) and the structure was not open to the public nor was Pentecost licensed or privileged to enter or remain. *See* SDCL 22-32-3.

[¶33.]        Pentecost's belief that he was licensed to enter the home does not cast doubt on the adequacy of the factual basis. Pentecost's attorney at the change of plea hearing, Ellery Grey, succinctly explained why Pentecost's claim is insufficient: "So although Mr. Pentecost believed at that time subjectively that he could go into the house because he had a mistake of law, a mistake of law would not have provided us with a defense at the time of trial." Indeed, Pentecost's mistake of law was not a defense to the second-degree burglary charge. *See Gakin v. City of Rapid City*, 2005 S.D. 68, ¶ 13, 698 N.W.2d 493, 498 ("Mere ignorance of the law can never be considered a mistake upon which relief from the operation or effect of the law may be predicated."). Likewise, Pentecost's claim that he had a legal right to be present in the home does not erode the adequacy of the factual basis for his plea. *See McDonough v. Weber*, 2015 S.D. 1, ¶ 38, 859 N.W.2d 26, 42 ("A defendant who admits all essential elements of a charge provides the necessary factual basis to

accept a plea, even if his or her contemporaneous assertion of a justification or excuse might actually result in a trial verdict of not guilty.").

[¶34.]      Further, while there was some confusion at the change of plea hearing as to whether Pentecost was making an *Alford* plea this does not change our decision. *See State v. Engelmann*, 541 N.W.2d 96, 101 (S.D. 1995) ("[A]n *Alford* plea cannot be withdrawn as a matter of course."); *see also North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (allowing acceptance of a guilty plea even though the defendant professes innocence if the defendant receives a benefit for pleading guilty). In exchange for pleading guilty to second-degree burglary, the State dismissed the stalking charges and the part II information and capped its sentencing recommendation at six years.[9] Pentecost received a benefit in exchange for his guilty plea. The record contains sufficient support for Pentecost's plea.

---

9.      The following exchange between the circuit court and Pentecost occurred at his change of plea hearing:

> **The court**: in the event that some[one] else determines that it is [an *Alford* plea], you understand that in the event that you enter this plea, even though your statements indicate that you were doing so simply to gain access to your home, . . . the State would have had certain evidence that they would intend to present at the time of trial with which they can substantiate the charge, and you understand that part of the agreement here today would be that while you are suggesting to me that the entry into the home was not done with an illegal purpose, very clearly, the State would have had evidence to suggest and convict – suggest that to the jury and convict at the time of trial. Do you understand that, sir?
>
> **Pentecost**: Yes, sir.

**CONCLUSION**

[¶35.]      We join the majority of jurisdictions that hold that the question whether a defendant is "licensed or privileged to enter or remain" in an occupied structure hinges on whether the defendant is in possession or control of the premises at the time of entry.  A claim of legal title or ownership is not solely dispositive.  Rather, the trier of fact must make this determination based upon an examination of the totality of the circumstances.  The circuit court did not abuse its discretion by denying Pentecost's motion to withdraw his guilty plea.  Finally, there was an adequate factual basis supporting Pentecost's guilty plea to second-degree burglary.  We affirm.

[¶36.]      GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.